William A. Kershaw, State Bar No. 057486
Stuart C. Talley, State Bar No. 180374
Ian J. Barlow, State Bar No. 262213
**KERSHAW TALLEY BARLOW PC**
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile:  (916) 721-2501
Email: bill@ktblegal.com
Email: stuart@ktblegal.com
Email: ian@ktblegal.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DUSTIN MOON, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAC POWER SYSTEMS, INC. and GENERAC HOLDINGS, INC., Wisconsin Corporations, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1) **Breach of Express Warranty;**<br>2) **Breach of Implied Warranty;**<br>3) **Breach of Express Warranty – Song Beverly Consumer Warranties Act;**<br>4) **Breach of Implied Warranty – Song Beverly Consumer Warranties Act;**<br>5) **California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.; and**<br>6) **California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.**<br><br><br>**JURY TRIAL DEMANDED** |

-1-

**INTRODUCTION**

1.      Plaintiff Dustin Moon ("Plaintiff") brings this proposed class action on behalf of himself and all current and former purchasers or lessees of Generac PWRcell systems. ("Solar Products" or "Systems"). The following allegations are based upon personal knowledge as to Plaintiff's own conduct and made on information and belief as to the acts of others.

2.      Plaintiff purchased a residential solar energy system equipped with a Generac PWRcell system. The PWRcell system operates in conjunction with home solar panels to provide, boost, regulate, convert, store, and monitor energy produced through the solar panels. Generac does not sell or provide the home solar panels. Rather, it manufacturers and sells the power management system used with the panels.

3.      Generac's PWRcell system includes components called SnapRS (Rapid Shutdown) units. SnapRS devices are safety devices designed to rapidly shut down power to individual solar panels as required by the National Electric Code ("NEC") and reduce photovoltaic ("PV") output voltage to safe levels (less than 80 volts). These critical "shutoff" units are installed between each solar panel and are designed to protect against electrical surges, such as those caused by lightning strikes. If working properly, the SnapRS devices prevent electric shock, electrocution, physical harm, equipment damage, and damage to property.

4.      However, Generac's SnapRS units are defective and dangerous to consumers and their homes. The shutoff devices malfunction by becoming overactive, repeatedly turning off and on, causing them to overheat, bubble, burn and explode, resulting in charring and home fires ("Defect"). In addition, the Defect results in a loss of energy production for consumers' home energy systems by shutting down entire panels for prolonged periods of time or complete shutdowns of their entire energy system. Malfunctions are detected through Generac's inverters and coded as "PVRSS Lockout" system errors which send the system into "lockout mode," preventing the solar energy system from producing solar energy until the lockout is cleared.

5.      Despite that it knew or should have known of this Defect, Generac failed to disclose this Defect to Plaintiff and other consumers. It has also failed to recall, provide refunds or adequate replacement components, or otherwise inform the public that its Systems are defective and pose a

serious safety risk to the public.

6.    Generac's conduct violates well-established tort and consumer protection laws, including in California. Plaintiff brings this suit on behalf of himself and similarly situated consumers, seeking damages and appropriate equitable relief, including an order enjoining Generac from selling its Solar Products without disclosing their defect to consumers.

**PARTIES**

7.    Plaintiff Dustin Moon is, and at all relevant times was, a citizen and resident of Soquel, California, located in Santa Cruz County, California.

8.    Defendant Generac Power Systems, Inc. distributes, markets, and directs the marketing of its products, including the aforementioned Systems, throughout the United States and, upon information and belief, is a publicly-traded Wisconsin corporation with its principal place of business located at S45 W29290 Highway 59, Waukesha, Wisconsin 53189.

9.    Defendant Generac Holdings, Inc. is the parent company of Generac Power Systems, Inc. Generac Holdings, Inc.'s principal executive offices are located at S45 W29290 Highway 59, Waukesha, Wisconsin 53189. Defendants Generac Power Systems, Inc. and Generac Holdings, Inc. are collective referred to herein as "Generac."

**JURISDICTION AND VENUE**

10.    This Court has original jurisdiction over the Class Action Fairness Act, 28 U.S.C § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from Generac; (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 class members, and (d) none of the exceptions under the subsection apply to this section.

11.    This Court has jurisdiction over Generac because it is registered to conduct business in California, has sufficient minimum contacts in California, and otherwise intentionally avails itself of the markets within California through the promotion, sale, marketing and distribution of its products, such that the exercise of jurisdiction by this Court is proper and necessary.

12.    Venue is proper in this District under 28 U.S.C. § 1391 because Generac conducts substantial business in this District, and a substantial part of the events giving rise to Plaintiff's

claims occurred in this District.

**FACTUAL ALLEGATIONS**

13. Generac describes itself as a "leading global designer and manufacturer of a wide range of energy technology solutions," providing "power generation equipment, energy storage systems . . . and other power products serving residential, light commercial and industrial markets." (Generac Feb. 22, 2022 Form 10-K, at p. 43, *available at* www.generac.com, *Investor Relations, SEC Filings,* https://investors.generac.com/static-files/16af6044-ca8b-4828-80f9-af48a4be7b55, last visited on Dec. 22, 2022.)

14. As of November 2022, Generac reported net sales of $4.6 billion (LTM) and Adjusted EBITDA (earnings before interest, taxes, depreciation, and amortization) of $872 million (LTM). (Generac Nov. 2022 Investor Presentation, at p. 4, *available at* www.generac.com, *Investor Relations, Investor Presentations,* https://investors.generac.com/static-files/114bea95-5b18-4a91-b786-af5b424e5158, last visited on Dec. 22, 2022.)

15. Generac was founded in 1959 as an affordable portable generator company. In 1980, it expanded into industrial power generation and introduced its first residential standby generator in 1989. Generac expanded its industrial products and global distribution system in the 1990s and in the 2000s continued to expand its residential and commercial automatic standby generator product lines. (Generac 2021 Annual Report, at pp. 3-4, *available at* www.generac.com, *Investor Relations, Annual & ESG Reports,* https://investors.generac.com/static-files/e6ea7b98-227f-4c08-b205-5c895533173e, last visited on Dec. 22, 2022.)

16. Starting in 2019, Generac made "significant investments" in "energy technology solutions" including through the rapid acquisition of several companies involved in the manufacture of residential solar panel systems. (*Id.* at p. 4.)

> [B]eginning with the March 2019 acquisition of Neurio Technology Inc., a leading energy data company focused on metering technology and sophisticated analytics to optimize energy use within a home or business. This was followed by the April 2019 acquisition of Pika Energy Inc., a designer and manufacturer of battery storage technologies that capture and store solar or other power sources for homeowners and businesses. In October 2020, the Company acquired Enbala Power Networks Inc., one of the leading providers of distributed energy optimization and control software that helps support the operational stability of the world's power grids. In July 2021, Generac added to its residential clean energy portfolio with the

-4-

acquisition of Chilicon Power LLC, a designer and provider of grid-interactive microinverter and monitoring solutions for the solar market. With these acquisitions, Generac has established itself as a credible leader in the rapidly growing residential clean energy market, focused on solar, battery storage and grid services applications.

(*Id.*; *see also id.* at p. 21.)

17.     Prior to these acquisitions, Generac was not involved in the residential solar energy business.

18.     Generac includes "Solar, Storage & Monitoring Markets Developing Quickly" among its "Strategic Growth Themes" and described its "Integrated Energy Ecosystem" as the "Industry's Broadest Residential Clean Energy Product Offering." (*Id.* at pp. 6, 14.)

19.     Its primary clean energy product offering is the PWRcell Solar + Battery Storage System.  Generac advertises its PWRcell system as a product that will "[s]ave money," allow customers to "prepare for power outages" and "help the environment."  (Generac PWRcell Brochure, *available at* www.generac.com, *Homeowners*, *Products – Clean Energy*, *PWRcell*, *PWRcell                                                                                                  Brochure*, https://www.generac.com/generaccorporate/media/library/content/clean%20energy/pwrcell_consumerbrochure_202212_digital.pdf?ext=.pdf ("PWRcell Brochure"), last visited Dec. 22, 2022.) The PWRcell system was designed and is manufactured by Generac.

20.     It claims that its PWRcell system "has all the power and capacity you need, enough to save money on energy bills and keep the whole home powered when the grid goes down . . . ." It also represents that its PWRcell system can "save you money on your monthly ele[c]tric bill AND protect you and your family," and that the system's cohesive load management provides consumers with "further protection."  (Generac.com, *Clean Energy*, *PWRcell*, at https://www.generac.com/all-products/clean-energy/pwrcell, last visited on Dec. 27, 2022.)

21.     Generac further advertises that its customers should "[n]ever be surprised by utility power outages or high electricity bills again when you have the Generac PWRcell, a fully integrated solar + battery storage system.  PWRcell provides backup power using stored energy from the sun, which helps you save money."  (PWRcell Brochure at p. 2.)

22. According to Generac, its PWRcell "offers 30% more power output than [its] competitors," estimated energy savings of $159 per month, and estimated savings of $68,217 over twenty-five years. (*Id.* at p. 5.) Generac customers can monitor the performance and energy output for their System through Generac's PWRview energy monitoring app. Among other functions, PWRview allows Generac customers to "[t]rack the status of [their] battery system to ensure energy is available during peak demand times and utility power outages" and "[u]nderstand how PWRcell helps [them] meet [their] energy needs . . . ." (*Id.* at p. 6.)

23. The PWRcell system is customizable and described by Generac as "easy" to install. Generac does not manufacture or provide the residential solar panels. Instead, its System "pairs with solar panels" made by other manufacturers. (*Id.* at p. 4.)

24. The PWRcell system manages, processes, stores, monitors, and provides electricity generated through the solar panels. Generac markets its PWRcell system as "revolutionary battery storage technology [that] captures and stores energy from the sun using solar panels" and that the "energy stored can be discharged to power your home during peak demand times when the cost of utility power is higher, which can help you save thousands in electric utility costs." In addition, Generac describes its PWRcell as being a critical safety system that can be used by consumers in the event of natural disasters or power outages. Specifically, its advertisements proclaim that the Systems "provide whole home backup power during utility power outages, so you stay comfortable, safe and secure in your home." (Generac PWRcell Homeowner Resources, *available at* www.generac.com, *Homeowners*, *Support – PWRcell and PWRview*, *Introducing PWRcell*, *available at* https://www.generac.com/service-support/pwrcell-homeowner-resources/introducing-pwrcell, last visited on Dec. 22, 2022.) For many consumers, especially vulnerable homeowners who need electricity for medical devices and other life saving measures, the ability of the Solar Products to reliably provide electricity during power outages, is a critical selling point for these Systems.

/ / /

/ / /

/ / /

-6-

25.     Generac depicts its complete, fully integrated PWRcell system with the following graphic:



(PWRcell Brochure at p. 8.)

26.     Among the components for Generac's PWRcell system are the PV Link and SnapRS, pictured and described below:



**SnapRS** / Rapid Shutdown Device

SnapRS is an in-line disconnect device that helps to satisfy module-level rapid shutdown requirements.



**PV Link** / Optimizer

Each PV Link allows you to connect 2 to 9 solar PV modules, enabling you to build a flexible, easy-to-install solar array.

(*Id.* at p. 9.)

27.     SnapRS (Rapid Shutdown) devices are connected to the negative lead of each PV module (solar panel) in the solar array "for simple module-level shutdown compliance.  SnapRS devices isolate array voltage when a rapid shutdown is initiated at a PWRcell Inverter.  When rapid shutdown is initiated, SnapRS units isolate each PV module in the array, reducing array voltage to <80V in seconds."  (Generac SnapRS Spec Sheet, *available at* https://www.generac.com/service-support/product-support-lookup/product-support-details?productid=4194798d-a712-4fc2-abe4-

08ed498f43de, last visited on Dec. 22, 2022.) A diagram of a solar panel array with the incorporated Generac PV Link and SnapRS devices (depicted as "RS") is shown below:



Diagram is applicable for most 60 cell PV modules. Modules with higher cell count may require a different arrangement. Contact Generac for more details.

(*Id.*)

28. Generac advertises that its SnapRS devices comply with 2017 and 2020 National Electrical Code ("NEC") requirements, specifically NEC "rapid shutdown requirements." (PWRcell Brochure at p. 9.) It also represents that "SnapRS and PV Link Optimizers are listed to UL 1741." UL 1741 is the Underwriters Laboratories Inc. Standard for Inverters, Converters, Controllers and Interconnection System Equipment for Use With Distributed Energy Resources, setting forth performance and safety requirements for such devices.

29. SnapRS units are installed between each solar panel to allow for rapid shutdown and protect against lightning strikes and other electrical surges, including when roof access is necessary or where electric shock or electrocution could result in serious injury, death and/or property damage.

30. Generac certifies and provides specific trainings, resources, and support to PWRcell sellers and installers, and has a distinct "Contractor Acquisition Team" to "onboard" its sellers and installers. (Generac.com, *Homeowners*, *Clean Energy*, *Become an Installer*, *available at* https://www.generac.com/resources-and-tools/ce-installer-resources/become-an-installer (last visited on Dec. 27, 2022.)

/ / /

/ / /

/ / /

**Generac's PWRcell Limited Warranty**

31.     Generac's written warranty for its SnapRS units is for 25 years and other System components are covered for 10 years.  Generac further warrants that its PWRcell products will be free from defects and that it will cover parts, labor, and travel for its defective equipment:

**Generac Power Systems Limited Warranty for Generac PWRcell®**

For the period of warranty noted below and beginning upon the successful registration of the unit, Generac Power Systems, Inc. (Generac) warrants that its Generac PWRcell® products will be free from defects in material and workmanship for the items and period set forth below. Any equipment that the purchaser/owner claims to be defective should be reported to Generac customer service for evaluation and resolution. Generac will, at its discretion, repair or replace any part(s) which, upon evaluation, inspection, and testing by Generac, an Independent Authorized Service Dealer or certified installer, is found to be defective.

| Product | Model Number | Warranty Period | Coverage |
|---|---|---|---|
| Generac PWRcell Battery Cabinet | APKE00007 APKE00028 | 10 years | Parts, Labor, and Limited Travel |
| Generac PWRcell Battery Modules | A0000391219 G0080040 G0080001 G0080003 G0080005 | 10 years or 7.56MWh of energy throughput per module, whichever comes first (i.e. a six module system carries a warranty of 10 years or 45.36 MWh of total energy throughput). Capacity retention guarantee at the end of the warranty period: At least 70% of nameplate rating. | |
| Generac PWRcell Inverter | APKE00014 APKE00013 XVT076A03 XVT114G03 | 10 years | |
| PWRmanager™ | G0080090 | 10 years | |
| PV Link™ | APKE00010 | 25 years | |
| SnapRS™ | APKE00011 RS801a RS802 | 25 years | |

32.     As alleged herein, Generac's Solar Products, including its SnapRS units, are not free from defects, including in the form of a defect where the SnapRS devices become overactive, overheats, bubbles, burns, separates, melts, chars, combusts, and/or explodes.  Despite this, Plaintiff and Class Members were denied coverage for repairs.  Rather, Generac takes the position that costs for repairs should be borne entirely by its customers or installers.

**Generac's SnapRS Devices Are Defective and Unsafe**

33.     Generac's SnapRS devices link each solar panel within a solar panel array (usually consisting of approximately eight panels).  Each array is connected to a PV Link optimizer, which connects and optimizes performance and energy output for the panels to help overcome, for example, site shading and roof line interference that can inhibit power production.  Electricity is routed through the SnapRS units to the PV Link and into the Generac home battery storage system.

Each PV Link and solar panel array connected by SnapRS units are referred to as a "power zone."

34. Generac's SnapRS devices are supposed to remain in either an "on" or "off" state for purposes of quickly reducing solar panel voltage.

35. Rather than remaining in an "on" or "off" condition, Generac's SnapRS units are defective in that they become overactive and turn on and off repeatedly. The overactivity in the SnapRS unit causes them to overheat, bubble, burn, separate, melt, char, combust, and/or explode. These thermal events can lead to fire and, upon information and belief, has caused fires and other potential hazards to Generac consumers' homes.

36. In addition, SnapRS failures can cause the System to experience a "PVRSS Lockout" error. A PVRSS Lockout occurs when the inverter detects a malfunctioning or overheating SnapRS between the solar panels. This can result in the System going into "lock out" mode, shutting down the solar power energy System or otherwise reducing its power generation.

37. Upon information and belief, and after Generac had received significant numbers of complaints from customers and installers about its System, Generac advised in or around August 2021 that it had a "fix" for the SnapRS overheating malfunction. It planned to release a firmware update and had the ability to remotely identify defective SnapRS units that were in danger of overheating and presented fire hazards to consumers. The firmware was intended to keep the SnapRS signal constant rather than turn on and off repeatedly.

38. Generac instituted the firmware updates in August 2021. However, the SnapRS overheating malfunction persisted. In addition, upon information and belief, Generac was aware that a significant number of customers had not even received the firmware update because their solar energy systems were not connected to the internet.

39. Furthermore, Generac's firmware update adversely impacted customer solar power energy Systems and energy production by triggering PVRSS Lockout system errors, shutting down the System or entire arrays of panels for prolonged periods of time.

40. Generac never disclosed to its customers that SnapRS malfunctions persisted despite its firmware update or that the firmware update could result in shutdowns or reduced power output for its customers' Systems.

-10-

41.     In or around late 2021, Generac released a next generation SnapRS, called the SnapRS 801A, which was supposed to fix the overheating malfunction in its prior SnapRS 801 model.  It did not.  Generac's SnapRS 801A had the same or similar defects as its SnapRS 801, including overheating and resulting in PVRSS Lockouts.

42.     Upon information and belief, Generac acknowledged in or around May 2022 that it experienced issues with its SnapRS 801 and 801A units and advised that it had developed and began supplying a new unit, the SnapRS 802.

43.     However, upon information and belief, Generac did not make enough SnapRS 802 units available to replace existing 801 and 801A units and to date has not replaced all of the existing prior SnapRS models still installed on consumers' homes.

44.     Upon information and belief, by spring of 2022, Generac represented that it had submitted a report to the Consumer Product Safety Commission ("CPSC") regarding its SnapRS devices but refused to issue a product recall.

45.     Upon information and belief, Generac has also acknowledged an estimated 50% failure rate in its SnapRS devices.

46.     As a result of the Defect, Generac's Solar Products pose an unreasonable safety risk to consumers and their property.  Instead of providing a reliable source of electricity in the event of a power outage or natural disaster, they are subject to premature failure and are inherently unreliable.  Additionally, the Defect results in fire damage, power surges, loss of electricity, and loss of monetary energy savings reasonably expected by consumers when purchasing their Generac Solar Products.

47.     Had Plaintiff and putative Class Members known that the Solar Products were unreliable, defective, and unsafe, they would not have purchased Products or would have paid less for them.

**Generac Had Actual and/or Constructive Notice of the Defect**

48.     Generac knew or should have known that reasonable consumers and their agents would be unaware of the true defective nature of the Solar Products, and that consumers reasonably expected that the Solar Products they ordered and installed would function properly and not expose

-11-

their homes and occupants to serious risk of harm.

49.     Similarly, Generac knew or should have known that solar power System installers would be unaware of the true defective nature of Generac's Solar Products.

50.     Instead of disclosing the material safety defects, Generac failed to disclose and did not warn consumers that its Solar Products were defective and unsafe.

51.     Generac had superior and exclusive knowledge of the Defect and the Defect is not reasonably discoverable by consumers until they experience a SnapRS thermal event or System disruption.  As a result of Generac's inaction and silence, consumers are unaware that they have purchased, installed, and continue to have unsafe Solar Products installed on their homes, while Generac continues to profit from the sale of its Solar Products to consumers.  Plaintiff and similarly situated consumers would not have purchased and installed Generac Solar Products had they known they were defective and unsafe.

52.     Plaintiff is informed and believes and based thereon alleges that Generac acquired its knowledge of the material Defect prior to the time Plaintiff and Class Members purchased or leased the Solar Products, including through numerous consumer complaints, warranty submissions, information acquired through its PWRview information and other PWRcell monitoring systems that allow it to monitor System performance, and complaints from authorized sellers and installers such as Power Home Solar, LLC d/b/a Pink Energy.  To be sure, Pink Energy filed a complaint against Generac detailing consumer and installer complaints to Generac based on Generac's defective SnapRS devices.  *See Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems*, Case No. 6:22-cv-000430NKM (W.D. Va.).

53.     Generac's knowledge of the Defect is also based on its: research, development, testing, inspections; research, design, testing, development, and release of its firmware update prior to August 2021; research, design, testing, development and release of its replacement SnapRS 801A model; and research, design, testing, development and release of its SnapRS 802 model.  Despite these updates and model replacements, Generac consistently failed to disclose and actively concealed the Defect from Plaintiff and putative Class Members.

54.     Generac had notice of the Defect through consumer complaints and concerns

-12-

submitted directly to Generac as well as from the multitude of complaints or concerns posted online, including to the Better Business Bureau ("BBB"), on Reddit, and Facebook.

55.     For example:



**Initial Complaint**
11/25/2022

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

In late 2020 we had a solar system installed by Powerhome ***** ************** Since the time of installation we've had constant issues with the system going down (mainly due to the SnapRS from Generac). The snaps have been replaced multiple times. In August of 2022, we received a letter from *********** saying that any issues with PVRSS lockout had to go through Generac. Shortly after that *********** filed for bankruptcy. Since September 5 of 2022 we've had 2 PV links that have a total of 13 panels in PVRSS lockout. I've called Generac numerous times and the only information I've been given is you are on the list and someone will contact you about setting up an appointment to come out and service your system-they have no idea when that will be. In the meantime we are paying the full loan amount and are paying higher than normal electric bills which is fast becoming a financial issue. Generac says they will not in any way reimburse customers for systems being down. I would like to have a definite time when someone will be out to repair the system.

**GENERAC** **Business response**
12/05/2022

Hello
Generac is in receipt of this complaint and have escalated this matter to our resolution team for further assistance.
Generac

(Better Business Bureau, www.bbb.org., Complaints – Generac Power Systems, Inc., last visited on Dec. 27, 2022.)

 TroyMcLure963 · 2 mo. ago

Had all my snapRS replaced with the new version after my array was down for 3 months with faulty first gen ones. But now have another issue and they are coming back out again soon. We will see.if it's another snapRS.

⬆ **1** ⬇   💬 Reply   Share   Report   Save   Follow

-13-

1    (Reddit.com, *PwrCellOwners*, last visited on Dec. 27, 2022.)

2

Posted by u/petersinct 4 months ago

### Looking at Generac solar system

Hi all,

I am considering a Generac solar /battery system with backup generator. In my research, I came across the SnapRS issue. Apparently, earlier this year Generac released a new version of the SnapRS - the SnapRS 802, which is supposed to solve the issue. I am trying to find how those are faring from someone who either has a new Generac system that came with those SnapRS 802's installed, or from someone with an existing system who has had Generac replace their existing 801's with 802's.

Another thing - when the Generac technician came out to the house earlier this week to do some measurements and roof assessment, I asked him about the SnapRS failures. He acknowledged that they have had to replace quite a few of them, but didn't seem to know anything about the new 802 version. He told me that they actually recommend to customers to have their SnapRS REMOVED if it fails, since apparently the electrical code in our state (connecticut) does not require them. I'm not an electrician, but if I understand correctly those SnapRS modules are intended to function as a safety device and it would make me a little nervous to not have them.

Any thoughts?

(Reddit.com, *PwrCellOwners*, last visited on Dec. 27, 2022.) The reddit PwrCellOwners community was founded as early as 2020.

★☆☆☆☆

**Gary of Corbett, OR** ✔ Verified Reviewer

Original review: Nov. 13, 2022

As I write this review, all the PV panels on my roof are off-line. Why, because of PVRSS lock-out errors: aka, the SNAP problem. Since, March of 2022, the system has been off-line more often than not. Generac keeps resetting the system remotely, and promising a real fix. First, they blamed faulty installation, then finally admitted the RS801 SNAP units were defective. After, my system was upgraded with the "new and improved" RS802 SNAP units, then they blamed faulty software. So far, nothing they have done has fixed my system.

Generac's custom service has been a major disappointment. They alternate between blaming anyone and everyone else, or acknowledging there "might" a defect in the system with a "possible" fix in the development. On any given day, the answer you get depends on who answers call or email. They still have not issued any kind of formal statement. Bottom line, we have a >$35K solar system with battery back-up, that cannot reliably produce electrical power or perform its primary mission of providing emergency back-up power - without the PV panels on-line, it can't even attempt to keep the batteries charged after the lost of utility power.

-14-

(Consumeraffairs.com/homeowners/generac-power-systems.html, last visited on Dec. 27, 2022.)

 **Brian Thomas**
September 30 · 🌐

Like many others our Generac PWRcell install started having SnapRS issues and PV Lockout errors. It started with 1 link of 5 panels. Finally after 2 weeks of unanswered phone calls and emails I went to the local solar installers office in person.. Very nicely explained my issue along a few other things I'd like to discuss including adding a ATS for a portable generator.

Later today I got a call back and they are scheduling a team to come out and remove all of the SnapRS as they claim Generac has given permission to operate our systems without them until they can develop a permanent solution. Any others heard about this method?

edit: local installer is Con Edision of NY/CT

(Facebook.com, Generac PWRcell Systems, Battery Storage, Home Energy, Energy Storage Group, last visited on Dec. 27, 2022.)

**Jim Humphrey**
April 26 · 🌐

Known snap rs part defect is my cause of 2 mos and now a 3 mos loss of 25-30% of my solar capacity. Generac defective part should have a reimbursement process for lost power as they also have connectivity to error msgs. Loss of $'s can be quantified in my opinion. I was told new part would be available end of April, 2022. No word yet.

![SnapRS / RS801 Inline Disconnect Device product box]

(Facebook.com, Generac PWRcell Systems, Battery Storage, Home Energy, Energy Storage Group, last visited on Dec. 27, 2022.)

-15-

56. Despite Generac's notice of the Defect, it refused to adequately address or remedy the Defect or remove its defective Solar Products from the market. It also improperly denied warranty claims or replaced its defective Solar Products with Solar Products that were still defective, inadequate, and failed to work properly.

57. Generac continues to refuse to appropriately address the Defect. It continues to sell its defective Solar Products, actively conceals the Defect, fails to notify its customers of the Defect, and refuses to recall the Systems.

## Plaintiff's Individual Facts

58. In or around July 31, 2020, Plaintiff purchased a Generac PWRcell system in Soquel, California for residential use. The PWRcell system and solar panels were installed by Infinium Solar, Inc. ("Infinium"). The cost of the solar energy system was $86,042 and after finance charges will cost roughly $100,000.

59. Prior to purchase, Plaintiff received materials about Generac's PWRcell system from Infinium and he conducted separate online research about Generac's PWRcell system, including on Generac's website. Plaintiff reasonably relied on representations contained in Generac's materials. Plaintiff at all times reasonably believed that he was purchasing a Generac System that would operate as intended for purposes of safely delivering dependable solar energy and lowering his energy costs.

60. In addition, Plaintiff at all times used the Generac System as intended for normal, residential energy production and savings.

61. In or around March 2022, SnapRS 801 components for Plaintiff's PWRcell system failed. He received a PWRcell system error alert and the Infinium repair person who inspected the problem found that SnapRS units for the System had bubbled and melted. Plaintiff's Generac System was down for roughly three-and-a-half months after the SnapRS devices failed.

62. Plaintiff believes the SnapRS 801 components were replaced with SnapRS 802s in or around June 2022. However, he continued to experience System power failures for several months even after SnapRS 802 devices were installed.

63. Plaintiff has suffered a loss of energy production and monetary harm as a result of

-16-

the defective Generac System.  Also, instead of owning a reliable alternative electrical source that could provide energy in the event of a power outage or natural disaster, Plaintiff now has an unreliable System that is subject to frequent outages and malfunctions.

64.     Plaintiff was unaware of Generac's defective System, including the SnapRS Defect, prior to purchasing the System.  Had he known of the Defect, he would not have purchased the System or would have paid less for it than he did.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

65.     The claims alleged herein accrued upon discovery of the defective nature of the Solar Products.  Because the Defect alleged herein is hidden and Generac took steps to either conceal or failed to disclose the true, character, nature and quality of the Solar Products, Plaintiff and Class Members did not discover and could not have discovered it through reasonable and diligent investigation.

66.     Any applicable statutes of limitations have been tolled by Generac's knowledge and actual misrepresentations and/or concealment and denial of the facts as alleged herein, which concealment is ongoing.  Plaintiff and Class Members could not have reasonably discovered the true defective nature of their Solar Products until they malfunctioned.  As a result of Generac's active concealment of the Defect and/or failure to inform Plaintiff and Class Members of the Defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

67.     Alternatively, the facts alleged above give rise to estoppel.  Generac has actively concealed the defective nature of the Solar Products.  Generac was and is under a continuous duty to disclose to Plaintiff and Class Members the true character, quality, and nature of the Solar Products, particularly that they posed a serious risk to life and property.  At all relevant times, and continuing to this day, Generac knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Solar Products.  Given Generac's failure to disclose this non-public information about the defective nature of the Solar Products—information over which it had exclusive control—and because Plaintiff and Class Members could not reasonably have known that the Solar Products were thereby defective, Plaintiff and Class Members reasonably relied on Generac's affirmative and/or ongoing concealment or nondisclosure.  Based

-17-

on the foregoing, Generac is estopped from prevailing on any statute of limitations defense in this action.

68.     Additionally, Generac is estopped from raising any defense of laches due to its own Unclean hands as alleged herein.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Generac on his own behalf and on behalf of a Nationwide Class and California subclass (collectively the "Class") as defined below.  At the class certification stage, in response to discovery and pursuant to any instruction by the Court, the Plaintiff may modify the class definition in the future.

**Nationwide class:**

During the fullest period allowed by law, all persons in the United States who purchased, leased, or otherwise acquired a defective Generac PWRcell System.

**California subclass:**

During the fullest period allowed by law, all persons in the United States who purchased or leased in the State of California a defective Generac PWRcell System.

70.     Excluded from the Class are (a) any Judge or Magistrate presiding over this action and members of their families; (b) Generac and any entity in which Generac has a controlling interest or which has a controlling interest in Generac; (c) the officers and directors of Generac; (d) Generac's legal representatives, assignees and successors; and (e) all persons who properly execute and timely request for exclusion from the Class.

71.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class.

72.     **Numerosity:** While the exact number of members cannot be determined yet, the Class consists of, at a minimum, thousands of people dispersed throughout the United States and California, such that joinder of all members is impracticable.  The exact number of Class Members can readily be determined by review of information maintained by Generac.

73.     **Commonality**: Common questions of law and fact exist as to all members of the Class.  Among the questions of law and fact common to the Class are:

a. Whether the Solar Products designed, manufactured and sold by Generac pose a safety risk to consumers;

b. Whether Generac knew, or should have known, that the Solar Products it sold posed an unreasonable safety risk to consumers;

c. Whether Generac concealed the Defect from consumers;

d. Whether the Solar Products contain a defect that presents an unreasonable risk of overheating, burning, bubbling, separating, melting, charring, combusting, and/or exploding;

e. Whether Generac concealed the safety risk its Solar Products posed to consumers;

f. Whether the safety risk the Solar Products pose to consumers is a material fact reasonable purchasers would have considered in deciding whether to purchase them;

g. Whether the Solar Products designed and manufactured by Generac possess any material defect;

h. Whether the Solar Products designed and manufactured by Generac are of merchantable quality;

i. Whether the Solar Products designed and manufactured by Generac are likely to pose a serious safety risk to consumers before the end of their reasonable expected lives;

j. Whether Generac breached express warranties relating to the Solar Products by failing to recall, replace, repair and/or correct the defect in the Solar Products;

k. Whether Generac breached implied warranties of merchantability relating to the Solar Products;

l. Whether Generac misrepresented the characteristics, qualities and capabilities of the Solar Products;

m. Whether Generac knew, or in the exercise of reasonable care, should have known of the Defect prior to distributing the Solar Products to Plaintiff and Class

-19-

Members;

n.  Whether Generac omitted, concealed from and/or failed to disclose in its communications and disclosures to Plaintiff and Class Members material information regarding the Defect;

o.  Whether Generac failed to warn consumers regarding the defective Solar Products;

p.  Whether Generac made fraudulent, false, deceptive, misleading and/or otherwise unfair and deceptive statements in connection with the sale of the Solar Products in its Solar Product literature and on its website, including those relating to standards, use and reliability;

q.  Whether Generac was unjustly enriched as a result of selling the defective Solar Products;

r.  Whether Generac should be ordered to disgorge all or part of the profits it received from the sale of the defective Solar Products;

s.  Whether Plaintiff and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

t.  Whether Plaintiff and Class Members are entitled to replacement of their defective Solar Products;

u.  Whether Plaintiff and Class Members are entitled to equitable relief, including an injunction and requiring that Generac engage in a corrective notice campaign and/or a recall of the defective Solar Products; and

v.  Whether Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, pre-judgment interest, post-judgment interest, and costs.

74.  **Typicality:** Plaintiff has substantially the same interest in this matter as all other Class Members, and Plaintiff's claims arise out of the same set of facts and conduct as all other Class Members. Plaintiff and all Class Members purchased or leased Solar Products which were manufactured by Generac with the Defect. All of the claims of Plaintiff and Class Members arise

-20-

out of Generac's placement into the marketplace of a Solar Product it knew was defective and caused a safety risk to consumers and from Generac's failure to disclose those known safety risks and the Defect. Also common to Plaintiff's and Class Members' claims is Generac's conduct in designing, manufacturing, marketing, advertising, warranting and/or selling the defective Solar Products, Generac's conduct in concealing the Defect in the Solar Products, and Plaintiff's and Class Members' purchase or leasing of the Solar Products.

75. **Adequacy of Representation:** Plaintiff is committed to pursuing this action and has retained competent counsel experienced in complex class action litigation and products liability. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of Class Members. Plaintiff's claims are coincident with, and not antagonistic to, those of the other Class Members they seek to represent. Plaintiff has no disabling conflicts with Class Members and will fairly and adequately represent the interests of Class Members.

76. The elements of Rule 23(b)(2) are met. Generac will continue to commit the violations alleged, and the members of the Class and the general public will continue to remain at an unreasonable and serious safety risk as a result of the Defect. Generac has acted and refused to act on grounds that apply generally to Class Members so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

77. The elements of Rule 23(b)(3) are met. Here, the common questions of law and fact enumerated above predominate over the questions affecting only individual Class Members, and a class action is the superior method for fair and efficient adjudication of the controversy. Although many other Class Members may have claims against Generac, the likelihood that individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Serial adjudication in numerous venues is furthermore not efficient, timely, or proper. Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly situated Plaintiff. Plaintiff's counsel, highly experienced in class action litigation, foresee little difficulty in the management of this case as a class action.

## FIRST CAUSE OF ACTION
### Breach of Express Warranty
### (Individually and on Behalf of the Nationwide Class and, in the Alternative, the California Class)

78.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

79.     As set forth above, Generac's written warranty to Plaintiff and the Class specifically provides for SnapRS coverage for 25 years and 10 years of coverage for other PWRcell components, warrants that its PWRcell products are defect free, and that it will cover parts, labor, and travel for its defective equipment.

80.     Generac breached its express warranty by selling Solar Products that were defective and not safe or reliable for providing residential solar electricity.

81.     Generac's warranty was uniform or substantially uniform as to product representations among the Solar Products sold.

82.     Plaintiff and Class Members have privity of contract with Generac through their purchase of Solar Products through Generac agents (e.g., its installer/seller network), and through express written warranties that Generac issued to its customers. Generac's warranties accompanied the Solar Products and were intended to benefit the ultimate consumers of the Solar Products.

83.     The express written warranties covering the Solar Products were material and part of the bargain with Generac, on the one hand, and Plaintiff and Class Members, on the other hand. At the time it made these express warranties, Generac knew of the intended purpose of the Solar Products.

84.     Generac breached its express warranties when it failed to sell Solar Products that were free of defects and which could be used for their ordinary purpose. Generac breached its express written warranties to Plaintiff and Class Members in that the Solar Products contain a defect upon the very first day of purchase, including in the form of SnapRS units that overheat, bubble, burn, separate, melt, char, combust, and/or explode when they become overactive. Generac's Solar Products create a serious risk to Plaintiff and Class Members, do not provide consistent or reliable residential solar energy, and fail to perform as represented by Generac.

-22-

85.     Plaintiff and Class Members submitted Generac Solar Products for repair, refunds, and/or replacement to Generac and/or its agents and Generac failed to comply with the terms of the express warranty provided to Plaintiff and Class members, by failing and/or refusing to repair or replace the subject defective Solar Products under the warranty as described herein.

86.     Generac's acts in failing and/or refusing to repair or replace the defective Solar Products during the warranty period so as to bring the Solar Products into conformity with the express warranties, deprived Plaintiff and Class Members of their rights guaranteed under the express warranties offered by Generac.

87.     The warranty also fails in its essential purpose because it is insufficient to make Plaintiff and Class Members whole, and/or because Generac has failed to provide the promised remedy within a reasonable time.

88.     As a direct and proximate result of the willful failure of Generac to comply with its obligations under the express warranties, Plaintiff and Class Members have suffered actual and consequential damages.  Such damages include, but are not limited to, the cost of repairing the Solar Products, loss of the use and enjoyment of the Solar Products, and diminution in the value of the Solar Products identified herein.

89.     In addition, many of the damages resulting from the defective Solar Products cannot be resolved through the limited remedy of repair or replacement, as those incidental and consequential damages have already been suffered due to Generac's conduct as alleged herein.

90.     Generac received notice and has been on notice of the defect and of its breaches of express warranties through customer complaints.

91.     Despite such notice and its knowledge of the defect, Generac failed to provide efect-free Solar Products to Plaintiff and Class Members, failed to properly or adequately repair and/or replace the defective Solar Products, and failed to provide any form of compensation for the damages resulting from the Defect.

92.     As a result of Generac's breach of its express written warranties, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.  Plaintiff and Class Members seek all remedies allowed by law.

-23-

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty
**(Individually and on Behalf of the Nationwide Class and, in the Alternative, the California Class)**

93.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

94.     Generac extended an implied warranty to Plaintiff and Class Members that the subject Solar Products were merchantable and fit for the ordinary purpose for which such goods were sold.

95.     Persons who purchased Generac Solar Products are entitled to the benefit of their bargain:  a residential solar energy system that is safe, dependable, and non-defective.

96.     Generac's defective Solar Products place Plaintiff, Class Members, and members of the public at a risk for injury upon using the Solar Products in a reasonably foreseeable manner.

97.     At the time of delivery, Generac breached the implied warranty in they are not fit for ordinary use and not of a merchantable quality in that the Solar Products were defective and posed a risk of injury to the public at the time of sale, would not pass without objection, and failed to conform to the standard performance of like products used in the trade.

98.     Generac knew or should have known that the Solar Products were defective, posed a risk to injury to the public, and knew or should have known of these breaches of implied warranties at the time of its sale of the Solar Products to Plaintiff and Class Members.

99.     Plaintiff and Class Members have privity of contract with Generac through their purchase of the Solar Products through Generac agents (e.g., its installer/seller network) and through the express written and implied warranties that Generac issued to its customers.  Generac's warranties accompanied its Solar Products and were intended to benefit the ultimate consumers of the Solar Products.

100.     As a direct and proximate result of Generac's breaches of its implied warranties, Plaintiff and Class Members bought the Solar Products without knowledge of the Defect, their serious risk of injury, and that the Solar Products failed to produce consistent and dependable residential solar energy.

-24-

101.    As a direct and proximate result of Generac's breach of its implied warranties, Plaintiff and Class Members purchased defective Solar Products, which could not be used for their intended use.

102.    Generac received notice and has been on notice of the Defect and of its breaches of warranties, including through:    customer inquiries, complaints, and concerns; warranty submissions; its own research, inspection, and testing; inquiries, complaints and concerns from its installer and seller network; lawsuits; media coverage and inquiries; and communications with governmental entities, including the CPSC.

103.    Despite such notice and its knowledge of the Defect, Generac failed to provide defect-free Solar Products to Plaintiff and Class Members, failed to replace the defective Solar Products, and failed to provide any form of compensation for damages resulting from the Defect.

104.    Had the fact of the Defect been disclosed at the time of sale, Generac's Solar Products could not have been sold, or could not have been sold at the same price.

105.    As a direct and proximate result of Generac's breach of its implied warranties, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Breach of Express Warranties Under the Song-Beverly Consumer Warranty Act**
**(Individually and on Behalf of the California Sub-Class)**

106.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

107.    The Solar Products are "consumer goods" under California Civil Code section 1791(a).

108.    Generac is and was at all relevant times a "manufacturer" of the Solar Products under California Civil Code section 1791(j); and, with respect to leases, is and was at all relevant times a "lessor" of Solar Products under California Civil Code section 1791(j).

109.    Plaintiff and Class Members bought and leased Solar Products designed, manufactured, warranted, marketed to them, and intended to be purchased or leased by consumers such as them, by Generac.

-25-

110.    Generac expressly warranted the Solar Products against defects within the meaning of California Civil Code sections 1791.2 and 1793.2.

111.    As described above, the Solar Products are defective. The Defect impairs the use, value, and safety of the Systems to reasonable consumers, Plaintiff and Class Members.

112.    Generac knew of the Defect when it expressly warranted the Solar Products, wrongfully and fraudulently concealed material facts regarding the Defect, failed to inform Plaintiff and Class Members that the Solar Products were defective, and induced Plaintiff and Class Members to purchase or lease the Solar Products under false and/or fraudulent pretenses.

113.    Generac is obligated, under the terms of its express warranties and pursuant to California Civil Code sections 1793.2 and 1795.4 to repair and/or replace the defective Solar Products at no cost to Plaintiff and Class Members.

114.    Generac breached its express warranties by supplying defective Solar Products to Plaintiff and Class Members.

115.    Generac breached its express warranties by failing to repair the Solar Products under warranty and failing to provide to Plaintiff or Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that it promised when it sold the Solar Products to Plaintiff and Class Members.

116.    As detailed above, Generac was provided with appropriate notice and has been on notice of the Defect and of its breach of its express written warranties from various sources, including Plaintiff.

117.    Plaintiff has given Generac a reasonable opportunity to cure its failures with respect to its warranties, and Generac has failed to do so.

118.    Affording Generac any further opportunity to cure their breach of written warranties is unnecessary and futile here.

119.    Any express warranties promising to repair and/or correct any defects fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and Class members whole and because Generac has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

-26-

120.     Accordingly, recovery by Plaintiff and Class Members is not restricted to any written warranties promising to repair and/or correct defects, and they seek all remedies as allowed by law.

121.     Any attempt by Generac to limit or disclaim the express warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to California Civil Code section 1790.1.

122.     As a direct and proximate result of Generac's breach of its express warranties, Plaintiff and Class Members received goods that have substantially impaired value and have suffered damages in an amount to be determined at trial.

123.     Pursuant to California Civil Code sections 1794 and 1795.4, Plaintiff and Class Members are entitled to incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Breach of Implied Warranties Under the Song Beverly Consumer Warranty Act
### (Individually and on Behalf of the California Sub-Class)

124.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

125.     Generac Solar Products are "consumer goods" and Plaintiff and Class Members are "buyers" within the meaning of California Civil Code section 1791. Generac is also a "manufacturer" and "lessor" under California Civil Code section 1791.

126.     Every sale or lease of consumer goods is accompanied by a manufacturer's implied warranty that the goods are merchantable within the meaning of California Civil Code section 1791.1(a).

127.     Generac impliedly warranted to Plaintiff and Class Members that its Solar Products were "merchantable" within the meaning of California Civil Code sections 1791 and 1792.

128.     The implied warranty of merchantability included with each sale or lease of a Generac Solar Product means that Generac warranted that each item (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Solar Products would be used; and (c) conformed to Generac's promises or affirmations of fact.

-27-

129.     This implied warranty included, inter alia, a warranty that the Solar Products manufactured, supplied, distributed, and/or sold by Generac were safe and reliable; and a warranty that the Solar Products would be fit for their intended use while the Solar Products were being used.

130.     Contrary to the applicable implied warranties, the Solar Products at the time of sale or lease and thereafter were defective and not fit for their ordinary and intended purpose in that they pose a safety risk and do not produce consistent and dependable solar energy.

131.     The Defect at the point of sale or lease exists without warning to Class Members.

132.     Plaintiff and Class Members were intended third-party beneficiaries of the contracts for sale or lease of the Solar Products from Generac to its agents (e.g., installer/seller network) who ultimately sold the Solar Products to Plaintiff and Class Members. Generac, which manufacturers and markets the Solar Products, knew that Plaintiff and Class Members were end-users of the Solar Products, and brought itself into privity with Plaintiff and Class Members who relied upon written representations made by Generac as alleged herein.

133.     Generac's actions have deprived Plaintiff and Class Members of the benefit of their bargain and have caused the Solar Products to be worth less than what Plaintiff and Class Members paid.

134.     Any attempt by Generac to limit or disclaim the implied warranties in a manner that would exclude coverage of the Defect is unenforceable and void pursuant to California Civil Code sections 1790.1, 1792.3, and 1793.

**FIFTH CAUSE OF ACTION**
**Unlawful, Unfair and Fraudulent Business Practices,**
**California Business and Professions Code § 17200, et seq.**
**(Individually and on Behalf of the California Sub-Class)**

135.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

136.     Generac's practices as alleged in this complaint constitute unlawful, unfair, and fraudulent business practices under California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. ("UCL").

-28-

137.    Generac committed unlawful, fraudulent and/or unfair business practices in violation of the UCL because it, among other things:  (a) knew or should have known that its Solar Products contained a dangerous Defect; (b) knew or should have known Plaintiff and Class Members could not learn or discover the Defect; (c) failed to disclose the Defect in the Solar Products; and (d) engaged and continues to engage in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class Members.

138.    Among other things, Generac:  (a) failed to disclose and/or concealed from Plaintiff and Class Members at the time of sale that its Solar Products contained a significant safety Defect as detailed herein; and (b) failed to repair, replace or recall the defective Solar Products. Because the Defect is not observable, reasonable Plaintiff and Class Members were deceived into purchasing Solar Products with the Defect.

139.    Plaintiff and Class Members have suffered injury in fact as a result of Generac's unlawful, unfair, or fraudulent practices, in that, among other things: (a) they would not have purchased the Solar Products; (b) they have been deprived of making an informed decision about the Solar Products they purchased; and (c) they would not have endangered themselves or the occupants of their households with these dangerously defective Solar Products.

140.    As an entity with exclusive knowledge regarding the Defect, Generac had a duty to disclose the Defect, particularly in light of the fact that the Defect poses risks of significant injury and economic losses to Plaintiff and the Class Members.

141.    Plaintiff and the Class Members reasonably expected that Generac would disclose the existence of the Defect to consumers and the public, and reasonably expected that Generac would not sell or lease a product that was defective and prone to cause significant injury and/or that failed to provide consistent and dependable solar energy.  This information is and was material to Plaintiff and Class Members.

142.    Generac, at all times relevant, knew or should have known that Plaintiff and Class Members did not know of, or could not have reasonably discovered, the risks related to the Defect.

143.    By concealing the existence of the Defect, Generac engaged in actionable, fraudulent conduct within the meaning of the UCL.

-29-

144. Had Plaintiff and Class Members known that the Solar Products were defective, they would not have purchased or leased them. In addition, Plaintiff and Class Members have lost the benefit of their bargain as the Solar Products they paid for are not worth the price paid due to their defective condition.

145. Generac's business acts and practices alleged herein are unfair within the meaning of the UCL. Specifically, by failing to disclose and actively concealing the existence of the Defect in the Solar Products, Generac has engaged in unfair conduct within the meaning of the UCL.

146. Generac's misconduct is unfair within the meaning of the UCL: it offends established policy and/or is immoral, unethical, unscrupulous, and substantially injurious to consumers; its utility, if any, is outweighed by the gravity of the consequences to Plaintiff and other Class Members; and it undermines or violates the stated policies underlying the California Consumers Legal Remedies Act, California Civil Code section 1750, et seq. ("CLRA"), which seeks to protect consumers against unfair and sharp business practices and promote a basic level of honesty and reliability in the marketplace, and thus provides a sufficient predicate for Plaintiff's claims for unfair business practices.

147. Generac committed unlawful acts and practices by, among other things, engaging in conduct, as alleged herein, the violates the CLRA and Song Beverly Consumer Warranties Act.

148. Plaintiff and the Class Members have suffered damages as a result of Generac's misconduct. Generac's unlawful, unfair, and fraudulent business acts and practices continue through the date of this filing.

149. The above-described unfair, unlawful and fraudulent business practices conducted by Generac present a threat and likelihood of harm and deception to members of the Class and the public in that Generac has systematically perpetrated and continues to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

150. Under the UCL, Plaintiff and Class Members request that Generac be enjoined from engaging in business practices that constitute a violation of the UCL and other acts prohibited by law. Plaintiff and Class Members further request that this Court enter such orders or judgments as

may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair practices, as provided for in California Business and Professions Code section 17203 and for such other relief as set forth herein.

## SIXTH CAUSE OF ACTION
**Violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.**
**(Individually and on Behalf of the California Sub-Class)**

151.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

152.   Generac is a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and has provided "goods" within the meaning of California Civil Code sections 1761(b) and 1770.

153.   Plaintiff and members of the Class are "consumers" within the meaning of California Civil Code sections 1761(d) and 1770 and have engaged in a "transaction" within the meaning of California Civil Code sections 1761(e) and 1770.

154.   Generac's acts and practices, which were intended to result and which did result in the sale of Generac products to Plaintiff and Class Members, violate section 1770 of the Consumers Legal Remedies Act in that:

   a.   Generac represents that its Solar Products have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

   b.   Generac represents that its Solar Products are of a particular standard, quality, or grade when they are not (Cal. Civ. Code § 1770(a)(7));

   c.   Generac advertises its goods with intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

   d.   Generac represents that its goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

155.   Generac knew, should have known, or was reckless in not knowing that its Solar Products were defective and did not have the qualities and characteristics it represented, warranted, and advertised them to have.

-31-

156. Generac engaged in these unfair and deceptive acts or practices with the intent that they result, and which did result, in the sale of the of the subject Solar Products to Plaintiff and the Class.

157. Generac's unfair and deceptive acts or practices occurred repeatedly in its course of trade or business, were material, capable of deceiving a substantial portion of the purchasing public and imposed a safety risk to Plaintiff and Class Members.

158. Generac was under a duty to Plaintiff and Class Members to disclose the deceptive and defective nature of its Solar Products in part because: the Defect in the Solar Products presents a serious safety hazard and the Solar Products failed to produce consistent and dependable solar energy; Generac was in a superior position to know and had exclusive knowledge of the true condition of its Solar Products; Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Solar Products were defective; Generac knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover the Defect in the Solar Products.

159. As described above, in connection with the marketing and sale of its Solar Products to Plaintiff and Class Members, Generac actively concealed and failed to disclose material information despite having knowledge the Defect described herein before Plaintiff and Class Members purchased the Solar Products.

160. The fact that consumers were entering into a sale or lease for Solar Products that were unsafe and failed to operate properly is a material fact in that a reasonable person would have considered that an important factor in deciding whether to complete the transaction for the subject Solar Products. Plaintiff would not have purchased the subject Solar Products had he known of that fact.

161. As a direct and proximate result of Generac's violations of law, Plaintiff and Class Members suffered injury in fact and lost money or property.

162. Plaintiff seeks an order enjoining Generac from the unlawful practices described above and an Order requiring Generac to notify the Class of its violations of the CLRA and the remedy it will provide to them.

-32-

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.     For compensatory damages in an amount to be determined at trial;

B.     For punitive damages in an amount to be determined at trial;

C.     For an award of reasonable attorneys' fees, costs and expenses;

D.     For interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and

E.     For such other and further relief, including equitable and injunctive relief, that the Court deems just, equitable, and appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 30, 2022             KERSHAW TALLEY BARLOW, PC

By: */s/ William A. Kershaw*
William A. Kershaw
Stuart C. Talley
Ian J. Barlow
401 Watt Avenue
Sacramento, California 95864
Telephone: (916) 779-7000
Facsimile: (916) 721-2501
Email: bill@ktblegal.com
Email: stuart@ktblegal.com
Email: ian@ktblegal.com

*Attorneys for Plaintiff and the putative Class*

-33-

## DECLARATION OF WILLIAM A. KERSHAW
## PURSUANT TO CALIFORNIA CIVIL CODE § 1780(d)

I, William A. Kershaw, declare as follows:

      1.      I submit this declaration pursuant to section 1780(d) of the California Consumers Legal Remedies Act. I have personal knowledge of the matters set forth below and if called as a witness could and would be competent to testify thereto.

      2.      Defendants Generac Power Systems, Inc. and Generac Holdings, Inc. are Delaware corporations with their principal place of business in Wisconsin. Defendant was engaged in the business of sales, marketing, and distribution of its solar power energy systems and components in California, and throughout the United States of America.

      I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed on December 30, 2022 in Sacramento, California.

*/s/ William A. Kershaw*
WILLIAM A. KERSHAW