# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| IN RE: GENERAC SOLAR POWER SYSTEMS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Related to All Cases | Case No. 23-md-1078<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

I.      FACTUAL BACKGROUND ................................................................................ 1

II.     PROCEDURAL BACKGROUND ...................................................................... 4

III.    SUMMARY OF MATERIAL SETTLEMENT TERMS ................................. 8

   A.   Settlement Class Definitions .............................................................................. 8

   B.   Monetary Relief.................................................................................................. 8

   C.   Plan of Allocation for Monetary Relief.............................................................. 9

   D.   Non-Monetary Relief ....................................................................................... 11

   E.   Notice and Administration ............................................................................... 12

   F.   Limitations on Release of Claims .................................................................... 16

   G.   Attorneys' Fees, Costs, and Service Awards ................................................... 16

IV.     LEGAL STANDARD ...................................................................................... 17

V.      THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.................... 17

   A.   The Proposed Settlement Class Satisfies Numerosity...................................... 18

   B.   The Proposed Settlement Class Satisfies Commonality ................................... 18

   C.   The Proposed Settlement Class Satisfies Typicality ........................................ 18

   D.   The Proposed Settlement Class Satisfies Adequacy ........................................ 19

   E.   The Proposed Settlement Class Satisfies Predominance................................... 19

   F.   The Proposed Settlement Class Satisfies Superiority ....................................... 20

VI.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED  20

   A.   The Settlement Falls Within the Range of Reasonableness ............................. 22

   B.   Class Counsel Have Adequately Represented the Settlement Class.............................. 22

   C.   The Settlement Resulted from Arm's Length Negotiation ............................... 23

   D.   The Settlement is Adequate in Light of the Costs, Risks,
   and Delay of Trial and Appeal......................................................................... 23

   E.   The Method of Distributing Relief is Effective ............................................. 24

   F.   Attorney's Fees ............................................................................................... 26

   G.   Class Members are Treated Equitably ............................................................. 26

   H.   The Opinion of Competent Counsel ................................................................ 26

VII.    APPOINTMENT OF PROPOSED SETTLEMENT CLASS REPRESENTATIVES  27

VIII.   APPOINTMENT OF PROPOSED SETTLEMENT CLASS COUNSEL.................... 27

IX.     THE PROPOSED NOTICE PLAN IS ADEQUATE ................................. 28

X.      PROPOSED SCHEDULE OF EVENTS .................................................. 29

XI.     CONCLUSION ................................................................................................ 29

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..................................................................................17

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)................................................................20

*Berglund v. Matthews Senior Hous. LLC*,
  No. 21-cv-108-pp, 2023 WL 6847696 (E.D. Wis. Oct. 17, 2023) .........................19

*Bohnert v. RB Royal Indus.*,
  No. 23-cv-141-pp, 2025 WL 619323 (E.D. Wis. Feb. 26, 2025) ..........................21

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ................................................................17

*Donovan v. Estate of Fitzsimmons*,
  778 F.2d 298 (7th Cir. 1985) ..................................................................17

*Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enter. Co., Ltd.*,
  No. 2:09-cv-00852-LA, 2015 WL 13019613 (E.D. Wis. Aug. 13, 2015)...............17

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ..................................................................21

*Haak v. Generac Power Sys., Inc.*,
  No. 8:22-cv-2470 (M.D. Fla. Oct. 28, 2022) .......................................3, 4

*Harvey v. Cmty. Health Network, Inc.*,
  No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878 (S.D. Ind. May 3, 2023) ...............24

*Holloway v. Kohler Co.*,
  No. 23:CV-1242-JPS, 2024 WL 3518644 (E.D. Wis. July. 24, 2024)..................17

*Mulvania v. Sheriff of Rock Island Cnty.*,
  850 F.3d 849 (7th Cir. 2017) ..................................................................18

*In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2020 WL 2477955 (N.D. Ill. Jan. 21, 2020), *aff'd sub nom. Matter of Navistar
  MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 990 F.3d 1048
  (7th Cir. 2021)..................................................................................20

*Shaw v. Quad/Graphics, Inc.*,
  No. 20-cv-1645-pp, 2025 WL 2972286 (E.D. Wis. Oct. 21, 2025) .......................20

*Spettel v. Poly Vinyl Co., Inc.*,
  No. 23-CV-1681-JPS, 2025 WL 2356065 (E.D. Wis. Aug. 14, 2025)...................22

*In re: Subway Footlong Sandwich Mktg. and Sales Pracs. Litig.*,
   No. 3:13-md-2439, 2015 WL 12616163 (E.D. Wis. Oct. 2, 2015) ................................ *passim*

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ...................................................................................... 18

*In re TikTok, Inc., Consumer Privacy Litig.*,
   565 F. Supp. ................................................................................................................ 28

*In re TikTok, Inc., Consumer Privacy Litig.*,
   565 F. Supp. 3d 1076 (N.D. Ill. 2021) .................................................................... 21, 28

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .................................................................................................... 19

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ............................................................ 21, 22, 23, 26

**Statutes**

28 U.S.C. § 1407 ...................................................................................................................... 4

**Court Rules**

Federal Rules of Civil Procedure Rule 23 ....................................................................... 1, 21

Rule 23(a)(2) ...................................................................................................................... 18

Rule 23(e) ...................................................................................................................... 20, 21

Rule 23(e)(2) ................................................................................................................ 17, 21

Rule 23(e)(2)(A) .................................................................................................................. 22

Rule 23(e)(2)(B) .................................................................................................................. 23

Rule 23(e)(2)(C)(i) .............................................................................................................. 23

Rule 23(e)(2)(C)(ii) ............................................................................................................. 24

Rule 23(e)(2)(D) .................................................................................................................. 26

Rule 23(e)(3) ...................................................................................................................... 21

Rule 23(e)(C)(iii) ................................................................................................................ 26

Rule 23(e)'s ......................................................................................................................... 21

Rule 30(b)(6) ................................................................................................................... 3, 7

**Other Authorities**

Joint Stipulated Motion for Protective Order, ECF 16 (Sept. 1, 2023) ...........................................5

Second Transfer Order, ECF 2 (June 14, 2023)..........................................................................3, 4

Transfer Order, ECF 1 (June 2, 2023) ......................................................................................3, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Robert Ammon, Marcia Baltimore, Nicole Kibert Basler, John Bettorf, Paul Cartmell, Steve Cothren, Geoff Edwards, Miles Fawcett, Joel Galarza, Melissa Gibson, Daniel Haak, Christopher Helmers, Kevin Hemphill, Albert Kates, Craig Lauder, Kathryn Locatell, Jodi Matas, Dustin Moon, Lori Morse, Adam Plichta, Jason Poston, Anita Richardson, Michael Shirk, Allan Slater, Carolyn Slusher, Rabia Stevenson, Beverly Taylor, Margaret Venema, Kerri Vincent, James Ward, and Mark Wasserman ("Plaintiffs") respectfully move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order: (1) granting Preliminary Approval of the Settlement between Plaintiffs and Defendants Generac Power Systems, Inc. and Generac Holdings, Inc. (collectively "Generac"); (2) certifying for settlement purposes the proposed Settlement Class; (3) appointing the thirty-one Named Plaintiffs as Settlement Class Representatives; (4) appointing as settlement Class Counsel Ian J. Barlow, Mark P. Chalos, Scott C. Harris, James J. Rosemergy, and Harper T. Segui; (5) approving the proposed form and method of notice set forth in the Settlement Agreement; (6) approving the proposed Objection and Exclusion procedures; (7) setting a date and time for a Fairness Hearing for the Court to consider final approval of the Settlement; and (8) staying all litigation deadlines pending Final Approval of the Settlement. This Settlement, reached after substantial expert investigation and analysis, active litigation, and lengthy and hard-fought negotiations, will resolve all of Plaintiffs and Settlement Class Members' claims against Generac in the above-captioned action on a nationwide basis. The Settlement will provide immediate and substantial relief to Settlement Class Members while avoiding years of protracted litigation.

## I.    FACTUAL BACKGROUND

The proposed Settlement delivers an outstanding recovery for consumers who purchased or used Generac's residential solar power systems, called the PWRcell System ("PWRcell System

or "System"),[1] and should be approved. More specifically, the proposed Settlement provides monetary relief in the amount of $15 million, as well as non-monetary relief which benefits all consumers who own or use the PWRcell System, regardless of whether those consumers participate in the Settlement. The non-monetary relief includes: (1) changes to the Limited Warranty for the PWRcell Systems which both extends the Limited Warranty and alters the warranty claims process by eliminating certain requirements that were in place previously for consumers; and (2) educational materials for consumers relating to System errors and corrective measures.

This case involves the design, manufacture, marketing, and sale of PWRcell Systems which contain allegedly defective SnapRS devices ("Snaps" or "Snap devices"). *See* Consolidated Class Action Complaint (hereinafter "CCAC"), ECF 18, ¶¶ 68, 70, 73, and 75. Consumers purchased and used the PWRcell Systems without knowledge of the allegedly defective Snaps, and Generac allegedly omitted or otherwise failed to disclose at the time of purchase or otherwise that the Snaps were allegedly defective. *See id.* ¶¶ 13–18. Plaintiffs contend that because of the alleged defect, the Snaps become overactive, repeatedly turning off and on, causing them to overheat, bubble, burn, and explode. *See id.* ¶ 10. Plaintiffs further contend that the Snap failures resulted in a loss of energy production from PWRcell Systems and, moreover, that consumers overpaid or would not have purchased the PWRcell Systems at all had they known about the alleged defect at the time of purchase. *See id.* ¶¶ 11, 18. In Plaintiffs' Consolidated Class Action Complaint, Plaintiffs

---

[1] Unless otherwise defined, all capitalized terms herein shall have the same meaning as set forth in the Parties' Settlement Agreement.

brought thirty causes of action against Generac[2] on behalf of a nationwide and 16 state classes,[3] and following the Court's Decision and Order granting in part and denying in part Defendants' motion to dismiss, each cause of action survived to the extent that the causes of action were based on "a general duty to disclose the alleged defect prior to each sale" and not "based on misrepresentations or omissions in specific statements." *See* Decision and Order, ECF 38 at 21.

This Settlement follows more than three years of litigation from the first-filed case,[4] consolidation and transfer by the Judicial Panel on Multidistrict Litigation ("JPML") of nine actions to this District,[5] briefing and an order on a motion to dismiss, and a significant amount of fact discovery which culminated in settlement discussions. The Parties entered into arm's length negotiations via an extended mediation session overseen by Robert Meyer, a highly respected and experienced mediator; and months of subsequent negotiations and discussions to finalize the Settlement. Named Plaintiffs and their counsel zealously advocated on behalf of the consumers who purchased and used the PWRcell Systems and expended significant effort to accomplish this Settlement.

The Parties were well-informed of the strengths and weaknesses of their claims and defenses as they negotiated the Settlement. They had the benefit of this Court's Decision and Order on Generac's motion to dismiss, significant written and document discovery, corporate representative testimony under Rule 30(b)(6), and expert analyses informed by independent testing and site inspections of Generac's facilities as well as the homes of each Named Plaintiff. Although

---

[2] *See* Chalos Decl. [] for the full list of Plaintiffs' thirty causes of action.

[3] The state classes included California, Florida, Georgia, Illinois, Indiana, Michigan, Missouri, New York, North Carolina, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia. *See* CCAC ¶ 167.

[4] *See Haak v. Generac Power Sys., Inc.*, No. 8:22-cv-2470 (M.D. Fla. Oct. 28, 2022).

[5] *See* Transfer Order, ECF 1 (June 2, 2023) and Second Transfer Order, ECF 2 (June 14, 2023).

Plaintiffs were and continue to be confident in their case, they became aware during the course of discovery that Generac had begun replacing the allegedly defective Snaps in or around May 2022 ("Snap Replacement Program"). As part of its Snap Replacement Program, Generac removed and replaced roughly 80% of the originally-installed Snaps. While not dispositive in Plaintiffs' view, this fact added a layer of complexity and risk to continued litigation.

While Plaintiffs firmly believe in the merits of this case, continuing to litigate ongoing discovery disputes, engage in expert discovery (including expert reports and depositions) and the possibility of subsequent *Daubert* motions and briefing, a contested motion for class certification, summary judgment, through trial and any appeal, would consume significant resources, take years to reach finality, and raise the possibility of either reduced or no recovery. These risks are magnified given the complexity of product defect class actions *regardless of the strengths of the case on the merits*. Weighing the meaningful and certain recovery for the proposed Class in this Settlement against the risks and uncertainties of continued prosecution of this case, the Settlement at this juncture represents a strong result in the Settlement Class's best interests. Thus, Plaintiffs respectfully request that the Court grant Plaintiffs' unopposed motion for preliminary approval and enter the accompanying Preliminary Approval Order.

## II.  PROCEDURAL BACKGROUND

The first case regarding the Snap devices was filed in the Middle District of Florida on October 28, 2022.[6] Additional cases were thereafter filed, and a Petition for Transfer and Consolidation pursuant to 28 U.S.C. § 1407 was filed on March 3, 2023. Following briefing and oral argument, the cases were transferred by the JPML to the Eastern District of Wisconsin before this Court on June 2, 2023.[7]

---

[6] *See Haak v. Generac Power Sys., Inc.*, No. 8:22-cv-2470 (M.D. Fla. Oct. 28, 2022).
[7] *See* Transfer Order, ECF 1 (June 2, 2023) and Second Transfer Order, ECF 2 (June 14, 2023).

After initial procedural practice related to appointment of interim Co-Lead Counsel and the entry of other administrative orders, Plaintiffs filed their Consolidated Class Action Complaint on September 1, 2023.[8] This process involved vetting each Named Plaintiff after conducting initial screening and interviews of hundreds of Settlement Class Members. Plaintiffs asserted thirty causes of action and brought those claims on behalf of themselves, a nationwide class, and sixteen state classes.[9]

Generac filed a motion to dismiss the complaint in its entirety on October 31, 2023.[10] Following briefing, on May 24, 2024, the Court granted in part and denied in part Generac's motion to dismiss.[11] In pertinent part, Plaintiffs successfully opposed the motion, with every one of Plaintiffs' claims surviving. Notably, the Court recognized that "extensive discovery"[12] would need to be conducted as the case moved forward.

Since that time, the Parties have been actively engaged in party and third-party discovery, and expert investigation and analysis. The Parties negotiated and entered into numerous discovery protocols, including a Protective Order,[13] an ESI Protocol,[14] an Inspection Protocol,[15] and a Preservation Protocol,[16] each approved by the Court. The Parties also exchanged initial disclosures as well interrogatories and requests for production of documents, and corresponding written responses. As the Parties met and conferred in writing and via Zoom (for nearly twenty hours

---

[8] *See* CCAC, ECF 18 (Sept. 1, 2023).
[9] *See* CCAC ¶ 167.
[10] *See* Motion to Dismiss the Consolidated Class Action Complaint, ECF 32 (Oct. 31, 2023).
[11] *See* Decision and Order, ECF 37 and 38 (May 24, 2024).
[12] *See id.* at 7.
[13] *See* Joint Stipulated Motion for Protective Order, ECF 16 (Sept. 1, 2023).
[14] *See* Stipulation for Order re: Protocol for Production of Documents, ECF 22 (Sept. 6, 2023).
[15] *See* Stipulation for Order re: Inspection Protocol, ECF 28 (Oct. 13, 2023).
[16] *See* Stipulation for Order re: Joint Protocol for Preservation of SnapRS Components, ECF 62 (Jan. 31, 2025).

collectively) about these discovery requests and responses, Generac produced and Plaintiffs' counsel reviewed tens of thousands of pages of non-custodial and custodial documents. *See* Chalos Decl. ¶ 12. Plaintiffs also have a rough estimation of the universe of unproduced additional documents based on the Parties' meet and confer efforts and negotiations over ESI search terms. *See id.*

As document-related discovery continued, the Parties moved forward with in-person inspections of each Named Plaintiff's System. *See id.* ¶ 13. The inspections involved day-long visits to the homes of each Named Plaintiff, situated around the country, whereby data was collected by the Parties' experts throughout the day in order to monitor and evaluate the performance of each Named Plaintiff's System. *See id.* In total, the extensive process to plan, coordinate, and execute thirty-one, cross-country site inspections, as well as secure, ship, and store any evidence from Plaintiffs' Systems for future destructive testing, took eight months and the expenditure of significant resources. *See id.* The Parties participated in numerous follow-up calls in advance of mediation to coordinate follow-up visits to certain Plaintiffs' Systems for further examination. *See id.*

A core dispute in this case was the alleged failure rate of the Snaps.[17] In order to assess the scope of the alleged failure, Plaintiffs' counsel and experts traveled to Portland, Maine on June 12, 2025, to inspect field-returned (and other) Snaps in Generac's possession and select exemplars to take into custody for subsequent joint inspection and destructive testing. *See id.* ¶ 14. In addition, the Parties met and conferred on numerous occasions to discuss the treatment of ongoing warranty service provided through Generac's dealers, installers, and service technicians to determine how

---

[17] *See* Decision and Order, ECF 58 (Dec. 2, 2024); *see also* the Parties' briefing on Plaintiffs' Motion for Sanctions, ECF 46–51 and 53–57.

to preserve Snaps from putative Class Members for purposes of litigation. *See id.* ¶ 15. The Parties agreed to specific instructions and protocols for service technicians providing warranty service to use and locations from which Snaps would be gathered for purposes of later inspection and testing. *See id.*

Further, Plaintiffs noticed the deposition of Generac pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. *See id.* ¶ 16. Plaintiffs took two depositions covering several of the noticed areas of inquiries, including Generac's data collection, management, and retention policies to facilitate Plaintiffs' understanding of Generac's document productions to date and drive resolution of disputes over outstanding document requests. *See id.* Moreover, Plaintiffs served subpoenas and requests for documents on and met and conferred with several of Generac's third-party manufacturers, product testing companies, and installers. *See id.* ¶ 12 n.2.

Finally, Plaintiffs' experts conducted an extensive investigation and analysis of the Snaps, which spanned several years. *See id.* ¶ 17. Due to the complexity of the case, Plaintiffs utilized both an electrical engineer for purposes of analyzing the circuitry of the Snaps as well as a mechanical engineer who had spent decades reviewing solar system components and installations. *See id.* Both experts attended the inspections of Named Plaintiffs' Systems. *See id*. In addition, there was an extended meet-and-confer process focused on the various protocols governing inspections and the preservation of evidence, which were informed by Plaintiffs' experts. *See id.* ¶ 18. Plaintiffs' experts assisted in the preparation of written discovery and reviewed key documents concerning Plaintiffs' theory of the case. *See id.* Plaintiffs' experts also conducted independent investigations and analyses of the Snaps to understand the alleged defect as well as to develop further protocols for joint expert examinations and testing. *See id.* ¶ 17. They were heavily

involved throughout the case and critical for assessing the strengths and weaknesses of Plaintiffs' claims.

## III.   SUMMARY OF MATERIAL SETTLEMENT TERMS

The full Settlement Agreement (hereinafter "S.A.") is Exhibit 1 attached to this Memorandum. The material terms of the Agreement are summarized below.

### A.   Settlement Class Definitions

A proposed Settlement Class Member is:

> … any person or entity who qualifies under the definition of "Settlement Class," excluding: (1) Defendants, their subsidiaries and affiliates, officers, directors, and employees; (ii) the judge to whom these cases are or have been assigned and any member of the judge's immediate family; (iii) any persons who timely exclude themselves from the Settlement Class in accordance with the procedures set forth in Section 6; and (iv) Class Counsel and counsel for Defendants.

S.A. § 1.57. The proposed **Settlement Class** consists of "**all current Owners and Primary Users of Generac PWRcell Systems purchased in the United States prior to the Execution Date of this Agreement**." *Id.* § 1.56.

An "Owner" is "any natural person or entity that holds contractual ownership rights to a PWRcell System" and "may, but need not, be the Primary User." *Id.* § 1.34.

A "Primary User" is "the homeowner or other occupant of the premises at which a PWRcell System is installed who is financially responsible for the electric service on the premises" and "may, but need not, be the Owner." *Id.* § 1.43.

### B.   Monetary Relief

Under the proposed Settlement Agreement, Generac will pay $15 million into a non-reversionary Settlement Fund to cover all of its obligations under the Settlement, including "for the administration of the settlement by the Settlement Administrator, the Notice Plan, Service

Awards, the Fee Award, Valid Claims, and any other administrative fees and expenses in connection with this Agreement." *Id.* § 3.1.

### C. <u>Plan of Allocation for Monetary Relief</u>

The Net Settlement Fund[18] will be allocated to Claimants on a per-PWRcell System basis, such that there will be a single Settlement Award attributable to each PWRcell System in an amount determined pursuant to the Plan of Allocation described herein and in the Settlement Agreement or any other allocation plan of which the Court approves. *Id.* § 3.11. As described more fully below, the total Settlement Award associated with a PWRcell System shall be the sum of the System Claim, any amounts allocated from the Cash Recovery Fund, and any amounts allocated from the Extraordinary Damages Fund. *Id.* § 3.11(A)(6).

The System Claim is a baseline award available to all qualifying Claimants who can demonstrate ownership or use (as a Primary User) of a qualifying system. *Id.* § 1.61. It is intended to compensate *all* Settlement Class Members for alleged lost system value, short-term loss of use or reduced power generation, and other economic loss not otherwise covered by an Out of Pocket Expense Claim or extended Loss of Power Generation Claim.

The value of a particular System Claim is determined based on points. *Id.* § 3.11(A)(3). Claimants will be allocated 10 Points for each Snap device connected to their PWRcell System. Claimants who first installed their PWRcell System in or after May 2022 will receive a 50% deduction on the Point total. Once all Points have been allocated, the Settlement Administrator shall determine the total number of allocated Points and then divide the amount of the System Claim Fund by the total number of allocated Points to determine the per-Point Value. The per-Point Value shall be multiplied by each System Claim's Point Allocation to determine the

---

[18] "Net Settlement Fund" is the "Settlement Fund net of any Notice and Administrative Costs, Service Awards, and Fee Awards." S.A. § 1.27.

monetary value of a System Claim. Significantly, Settlement Class Members identified on the Settlement Class List will be prequalified for a System Claim (based on their purchase or use of a PWRcell System) and will not need to provide additional proof of eligibility to recover under this claim category. *Id.* § 3.11(C)(1)(a). The System Claim Fund is determined by remaining amounts available after payments from the Cash Recovery and Extraordinary Damage Funds, described below. *Id.* § 1.62.

The Settlement Agreement also calls for $2 million to be allocated from the Settlement Fund for the creation of a Cash Recovery Fund. *Id.* §§ 1.3 and 3.11(A)(1). The Cash Recovery Fund will be used to compensate Claimants who submit valid Out of Pocket Expense Claims, Loss of Power Generation Claims, and Miscellaneous Cost Claims. *Id.* §§ 1.3. Such claims are intended to compensate Settlement Class Members who demonstrate they have, for example, incurred actual or projected hard expenses and other costs (such as for System removal), or suffered extended power outages or reduction, due to the alleged Snap defect. If the Cash Recovery Fund is insufficient to pay all such claims in their entirety, Claimants will receive a pro rata share of the Cash Recovery Fund. *Id.* § 3.11(A)(1). Any funds remaining after all valid Out of Pocket Expense Claims, Loss of Power Generation Claims, and Miscellaneous Cost Claims are satisfied will be reallocated to the System Claim Fund. *Id.* § 3.11(A)(1).

In addition, to account for unexpected but disproportionate circumstances and the risk those circumstances may pose to the Cash Recovery Fund, the Settlement Agreement earmarks $500,000 from the Settlement Fund for an Extraordinary Damage Fund. *Id.* §§ 1.20, 3.11(A)(2). The Extraordinary Damage Fund will be used to provide additional compensation for Claimants who submit valid Claims but whose Settlement Awards would exceed the Maximum Individual Award (of $20,000), or for whom the traditional valuation methodology is otherwise deemed insufficient

to adequately compensate them for their demonstrated loss (for example, the Extraordinary Damage Fund may be used to fully compensate Plaintiffs who were unable to address system issues during the pendency of the litigation to avoid evidence spoliation at the direction of counsel). *Id.* § 3.11(A)(2). If the Extraordinary Damage Fund is insufficient to pay all such claims in their entirety, Claimants will receive a pro rata share of the Extraordinary Damage Fund. Any funds remaining after all valid Claims are compensated are reallocated to the System Claim Fund. *Id.* § 3.11(A)(2).

With respect to opt-outs, if two or more Settlement Class Members are associated with the same PWRcell System, and any one of those Settlement Class Members timely opts out of the Settlement, then all Settlement Class Members, including any Claimants, associated with that PWRcell System are deemed to have opted out, and no Settlement Payment shall be made for that PWRcell System. *Id.* § 3.11(B)(1). In the event that overlapping Valid Claims are submitted by both an Owner and a Primary User for the same PWRcell System, the Claims shall be aggregated and all submissions shall be considered by the Settlement Administrator in determining the amount of the Settlement Award. *Id.* § 3.11(B)(2). Additionally, it will be presumed that the Owner and Primary User will each receive one-half (50%) of the portion of the award attributable to the System Claim, which may be rebutted by the presentation of evidence. *Id.* § 3.11(B)(2)(a). With respect to claims made against the Cash Recovery Fund and the Extraordinary Damages Fund, the Claimant demonstrating that they incurred the claimed compensable loss shall be entitled to receive the allocation attributable to such loss.

### D.    Non-Monetary Relief

In addition to the $15 million non-reversionary Settlement Fund, Generac has agreed to two sets of non-monetary relief for Owners and Primary Users of PWRcell Systems: (1) modifications to the Limited Warranty; and (2) educational materials to improve users'

understanding of their Systems. All Settlement Class Members will enjoy these benefits regardless of whether a particular Settlement Class Member opts out from the Settlement. *Id.* § 3.7.

*First*, Generac has agreed to make multiple modifications to the Limited Warranty. *Id.* § 3.7(A). The first modification to the Limited Warranty constitutes an extension of the Limited Warranty. For Systems originally including SnapRS 801 or 801A components, the start date of the 25-year warranty for SnapRS 802 devices will be calculated from the replacement date of 801 or 801A or installation of RS802s. *Id.* § 3.7(A)(1). Generac also agreed to modify its warranty claim requirements. *Id.* § 3.7(A)(2). Valid claims under the Limited Warranty previously required for the PWRcell System to be registered with Generac and connected to the internet. *Id.* As part of this Settlement, Generac has agreed to eliminate these requirements for Snap RS warranty claims for PWRcell systems bought prior to May 2022. *Id.* §§ 3.7(A)(2)–(3). These changes constitute material enhancements to the Limited Warranty and confer significant benefits to the Settlement Class. The Limited Warranty modifications are attached as Exhibit 7 to the Settlement Agreement.

*Second*, Generac has prepared materials to educate Settlement Class Members on Snap-related System errors and corrective measures. Specifically, Generac has prepared a notice that educates Settlement Class Members on the reasons for certain Snap-related error codes, any dangers associated with them, and corrective measures available for addressing them. *Id.* § 3.7(B) and Exhibit 8 attached to the Settlement Agreement ("Error Code Notice"). The Error Code Notice will be disseminated as part of the Settlement Notice program. *Id.* § 3.7(B).

### E. Notice and Administration

*Identification of Settlement Class Members*: Generac has agreed to make a reasonable effort to identify reliable direct contact information for Settlement Class Members, including names, emails, and physical addresses, with the understanding that Generac will be able to provide

direct contact information to the Settlement Administrator for at least 80% of Settlement Class Members. *Id.* § 4.2.

*Settlement Administrator*: Subject to Court approval, the Parties have agreed to Eisner Advisory Group LLC ("Eisner") as the Settlement Administrator after a competitive bidding process. *Id.* § 1.53. Eisner will be responsible for overseeing and implementing the Notice Plan, processing Claims, and managing the dissemination of funds. *Id.*

*Notice Plan*: As soon as reasonably practicable but no later than twenty-one (21) days after entry of the Preliminary Approval Order, the Settlement Administrator will: (1) disseminate direct notice; (2) launch www.GeneracSnapSettlement.com ("Settlement Website"); and (3) commence an online media campaign regarding the proposed Settlement. *Id.* §§ 4.4 and 4.6–4.7.

For direct notice, the Settlement Administrator will send direct email notice to Settlement Class Members using available email addresses, in a form substantially similar to Exhibit 3 attached to the Settlement Agreement (the "Settlement Notice") and will also include a hyperlink to the Error Code Notice (Exhibit 8) described above. *Id.* § 4.5. In addition, direct notice will be sent to Settlement Class Members using available physical addresses, also in a form substantially similar to Exhibit 3 attached to the Settlement Agreement ("Postcard Notice") which will include material information concerning the proposed Settlement and direct Settlement Class Members to additional information contained at the Settlement Website. *Id.* § 4.5.

The Settlement Administrator will create a Settlement Website which will contain, among other things, information about the underlying Action and proposed Settlement including the Settlement Notice, the Settlement Agreement, the Motion for Preliminary Approval of the Settlement and related papers, and the Error Code Notice. *Id.* § 4.6. Claimants will be able to use the Settlement Website to complete and submit a Claim Form or print a hard copy to submit by

mail. *Id.* § 8.1(B). The contents of the Settlement Website will be updated as appropriate such that after final approval filings have been submitted to the Court, including filings related to the Fee and Expense Award and Service Award, those papers will be made available on the Settlement Website. *Id.* § 4.6. The Settlement Website will also include the Opt-Out Form, answers to frequently asked questions, a list of important deadlines, case documents, as well as contact information for the Settlement Administrator. *Id.* Contemporaneously, the Settlement Administrator will commence an online media campaign whereby the settlement notice ads, in a form substantially similar to Exhibits 4 and 5 attached to the Settlement Agreement (the "Notice Ads"), will be delivered for thirty (30) days. *Id.* § 4.7. Eisner has also submitted an accompanying declaration in support of the proposed Notice Plan and claims process. *See* Declaration of Brandon Schwartz Regarding Settlement Administration and Notice Plan (hereinafter "Schwartz Decl.").

*Requests for Exclusion*: To request exclusion, a Settlement Class Member must complete, sign, and submit to the Settlement Administrator a Request for Exclusion as outlined in the Notice. *Id.* § 6.1. This Request for Exclusion form may be submitted electronically on the Settlement Website or mailed to the Settlement Administrator. The Request for Exclusion must be signed or e-signed by the Settlement Class Member seeking exclusion under penalty of perjury.

*Objections*: Any Settlement Class Member who does not submit a valid and timely Request for Exclusion may object to the Settlement Agreement. *Id.* § 7.1. Settlement Class Members who submit a valid and timely Objection but also submit a valid and timely Request for Exclusion will be deemed to have opted out of the Class and their Objection will be void and invalid, unless the Court orders otherwise. However, a Settlement Class Member who objects to the Settlement may submit a Claim Form on or before the Claims Deadline, which shall be processed in the same way as all other Claim Forms.

Any Participating Class Member who wishes to object to any aspect of the Settlement Agreement must electronically file with the Court via the Court's ECF system, or by delivery to the Clerk of the Court by mail, express mail, or personal delivery, a written statement of the objection(s), and send copies to Class Counsel and Defendants' Counsel. *Id.* § 7.2. The written statement of the objection(s) must: (i) identify the case name and number and identify that the document is an objection; (ii) state the Participating Class Member's full name, address, email address, and telephone number; (iii) state whether the Participating Class Member is represented and, if so, include the full name, address, telephone number, and email address of the objector's counsel; (iv) provide information sufficient to establish the objector's standing as a Settlement Class Member and state whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) state with specificity each objection, as well as the specific reasons, if any, for each objection, including all facts, evidence, and legal authority supporting his/her objection(s); (vi) identify the number of class action settlements previously objected to by the Participating Class Member, if any, and list those cases by case name and number; (vii) state whether the objector and objector's counsel, if any, will attend or appear at the final approval hearing; (viii) be signed by the objector; (ix) be signed by the objector's counsel, if any (the attorney's signature alone shall not be sufficient for satisfying the signature requirement; and (x) be verified by an accompanying declaration submitted under penalty of perjury or a sworn affidavit demonstrating that the Participating Class Member is entitled to be included as a member of the Settlement Class and that the information provided for the objection(s) is true and correct. Objectors must make themselves available for deposition by the Parties no later than seven (7) days after the Objection and Exclusion Deadline. If a Participating Class Member retains an attorney other than Class Counsel to represent him or her, the attorney must, no later than twenty-

one (21) days before the Final Approval Hearing or as the Court otherwise may direct, (i) file a notice of appearance with the Court and (ii) serve a copy of the notice of appearance on Class Counsel and Defendants' Counsel. *Id.* § 7.3.

*Administration Deadlines*: The deadline by which a Settlement Class Member must submit a claim is one hundred twenty-four days (124) following entry of the Preliminary Approval Order. *Id.* § 1.7. The deadline by which a Settlement Class Member must submit an objection to the Settlement Agreement or a request for exclusion is eighty-nine (89) days following entry of the Preliminary Approval Order. *Id.* § 1.32.

### F. Limitations on Release of Claims

The Settlement includes a release that is appropriately tailored to the claims in the case. The standard release language includes all claims relating to the allegedly defective Snap devices that were or could have been brought in the case. *Id.* § 1.46 ("Released Claims"). Critically, Released Claims exclude claims for personal and/or bodily injury, wrongful death, and property damage to property other than the claimant's PWRcell System(s), such that any claimants experiencing these types of losses will still have the opportunity to pursue them individually. *Id.* § 1.46.

### G. Attorneys' Fees, Costs, and Service Awards

Within seventy-four (74) days following entry of the Preliminary Approval order, Plaintiffs will apply to the Court seeking a reasonable proportion of the Settlement Fund as payment of reasonable attorneys' fees and costs ("Fee Award"), which will be paid from the Settlement Fund. *Id.* § 11.1. In addition, Plaintiffs will seek service awards not exceeding $5,000 as compensation for their time and effort expended in serving as Class Representatives. *Id.* § 11.3. Neither a request for a Fee Award nor service awards is a condition of this Settlement, and Generac has expressly reserved the right to oppose any such request. *Id.* § 11.1. However, and in accordance with the

requirements set forth in the Settlement Agreement to disclose their anticipated requested Fee Award and cost reimbursement, proposed Settlement Counsel will seek one-third of the Settlement Fund in fees and seek reimbursement of costs, which are $577,000 to date. *Id.* § 11.4.

## IV.    LEGAL STANDARD

Class action settlements are strongly favored as a matter of public policy. *See Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir. 1985) ("'There is an overriding public interest in favor of settlement' of class action suits." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977))). The Court must undertake "three essential inquiries" at the preliminary approval stage: (1) if "it will likely be able to certify the proposed settlement class"; (2) if, under preliminary scrutiny, "the proposed settlement is within the range of possible approval with respect to the criteria set forth in Rule 23(e)(2), reserving full examination of those criteria for the final approval stage"; and (3) the Court "must direct class counsel to provide notice "in a reasonable manner to all class members who would be bound" by the settlement such that the proposed notice program is "appropriate" and comports with class members' "due process rights to notice and an opportunity to be heard." *Holloway v. Kohler Co.*, No. 23:CV-1242-JPS, 2024 WL 3518644, at *2–3 (E.D. Wis. July. 24, 2024) (cleaned up).

## V.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

When deciding whether to certify a class for settlement purposes, "a court must consider the same factors that it would consider in connection with a proposed litigation class." *In re: Subway Footlong Sandwich Mktg. and Sales Pracs. Litig.*, No. 3:13-md-2439, 2015 WL 12616163, at *2 (E.D. Wis. Oct. 2, 2015) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The pertinent factors here are numerosity, commonality, typicality, adequacy, predominance, and superiority. *See Fond Du Lac Bumper Exchange, Inc. v. Jui Li Enter. Co., Ltd.*,

No. 2:09-cv-00852-LA, 2015 WL 13019613, at *2 (E.D. Wis. Aug. 13, 2015). Each of these factors are readily satisfied and support certification of the proposed Settlement Class.

### A.    The Proposed Settlement Class Satisfies Numerosity

To satisfy the first prerequisite of 23(a), the class must be so numerous as to make joinder impracticable. "While there is no magic number that applies to every case, a forty–member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). The proposed Settlement Class far exceeds 40 members, as there are approximately 28,000 System Owners and 34,000 Systems installed throughout the United States. *See* Chalos Decl. ¶ 10.

### B.    The Proposed Settlement Class Satisfies Commonality

Commonality is present in a class where, as the Seventh Circuit has explained, "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Overall, as this Court has held, "The threshold for commonality under Rule 23(a)(2) is not high." *In re: Subway Footlong Sandwich*, 2015 WL 12616163, at *2. Here, Generac designed, manufactured, marketed, and sold the PWRcell Systems with allegedly defective Snaps that allegedly caused Settlement Class Members to suffer damages. This is the common factual basis underlying all of Plaintiffs' and Settlement Class Members' claims. *See* Chalos Decl. ¶ 10. Thus, the proposed Settlement Class satisfies the commonality requirement.

### C.    The Proposed Settlement Class Satisfies Typicality

Typicality is satisfied when plaintiffs' claims are "typical of the [c]lass because they concern the same policies and practices of [d]efendant, arise from the same legal theories, and allege the same types of harm and entitlement to relief." *In re: Subway Footlong Sandwich*, 2015 WL 12616163, at *2. Plaintiffs' claims are typical in that Plaintiffs, like all Settlement Class

18

Members, purchased Systems that were designed, manufactured, marketed, and sold by Generac with allegedly defective Snap devices. *See* Chalos Decl. ¶ 10. Additionally, Plaintiffs, like Settlement Class Members, have allegedly suffered the same types of harm, which include injury at the time of purchase due to Generac's alleged omission of the alleged defect and subsequent economic loss including in the form of repairs and lost energy production. Typicality is satisfied. *See id.*

### D. The Proposed Settlement Class Satisfies Adequacy

Adequacy is satisfied when "there are no conflicts of interest between the Plaintiffs and the Class, and Plaintiffs have retained competent counsel to represent them and the Class." *In re: Subway Footlong Sandwich*, 2015 WL 12616163, at *2. Plaintiffs have protected and will continue to protect the interests of putative Class Members and have no interests antagonistic to those of the proposed Settlement Class. *See* Chalos Decl. ¶ 19. Plaintiffs have dedicated significant time and effort to the case after more than three years of litigation and will continue to do so as necessary. *See id.* Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer product cases. *See id.* ¶¶ 19, 28–48; *see also* Exhibits 1–4 attached to Chalos Decl. The adequacy requirement is met.

### E. The Proposed Settlement Class Satisfies Predominance

Predominance "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Berglund v. Matthews Senior Hous. LLC*, No. 21-cv-108-pp, 2023 WL 6847696, at *4 (E.D. Wis. Oct. 17, 2023) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Product defect class actions like the present case, involving an allegedly defective Snap device that allegedly caused harm at the time of System purchase as well as after manifestation of the defect, Generac's alleged knowledge of the allegedly defective component, the materiality of the allegedly

defective component to Plaintiffs and Settlement Class Members, and uniform warranty provisions, satisfy predominance. *See, e.g., In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2020 WL 2477955, at *2 (N.D. Ill. Jan. 21, 2020), *aff'd sub nom. Matter of Navistar MaxxForce Engines Mktg., Sales Pracs. & Prods. Liab. Litig.*, 990 F.3d 1048 (7th Cir. 2021) ("Common issues in the Litigation, such as the existence of a defect, Defendants' knowledge of that defect, and the materiality of that defect to reasonable consumers, predominate over individual issues."). The allegedly defective Snap devices, materiality of the alleged defect, Generac's knowledge of the alleged defect, and Generac's uniform warranty provisions, are central to the litigation and constitute common issues that predominate over any individualized issues of fact and law. Predominance is satisfied. *See* Chalos Decl. ¶ 20.

      **F.**      <u>**The Proposed Settlement Class Satisfies Superiority**</u>

Superiority requires that that "the proposed class will be manageable" as well as that certification "will also be the most efficient way to resolve Plaintiffs' claims." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010). Settlement of this complex, expert-intensive case on a nationwide basis is the most efficient outcome as it will save the expenditure of substantial resources that would be spent litigating cases individually while avoiding the possibility of inconsistent judgments, meeting the superiority requirement. *See* Chalos Decl. ¶ 25. Moreover, any Settlement Class Members who desire to do so will have the opportunity to request exclusion from the Settlement Class to pursue their claims individually.

## VI.     <u>THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED</u>

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Court may approve a class settlement if it determines the settlement is "fair, reasonable, and adequate." *Shaw v. Quad/Graphics, Inc.*, No. 20-cv-1645-pp, 2025 WL 2972286, at *1 (E.D. Wis. Oct. 21, 2025). At the preliminary approval stage, all that is necessary for the Court to determine is "whether the

Settlement is within the range of reasonableness." *See In re: Subway Footlong Sandwich*, 2015 WL 12616163, at *3 (cleaned up). The bar is low, and the Court is merely seeking to "ascertain whether there is *any* reason to notify the class members of the proposed settlement and to proceed with a fairness hearing, not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *See In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) (cleaned up) (emphasis added). The proposed Settlement is within the range of reasonableness and satisfies a more exacting application of Rule 23(e).

In addition to looking to Rule 23, the Seventh Circuit provides the following factors as guidance for settlement approval: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of [the] settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)). The factors identified in *Wong* "overlap" with the factors outlined in Rule 23(e)(2)[19] of the Federal Rules of Civil Procedure. *See Bohnert v. RB Royal Indus.*, No. 23-cv-141-pp, 2025 WL 619323, at *1 (E.D. Wis.

---

[19] Rule 23(e)(2) instructs the Court to consider whether:
    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.

Feb. 26, 2025). When applied to the Settlement at issue here, each of the pertinent factor weighs in favor of preliminary approval of the Settlement.

A.     **The Settlement Falls Within the Range of Reasonableness**

The Settlement falls within the range of reasonableness in light of the substantial benefits, both monetary and non-monetary, conferred upon the Settlement Class while avoiding years of continued litigation with no guarantee of recovery. "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *See In re: Subway Footlong Sandwich*, 2015 WL 12616163, at *; *see also Spettel v. Poly Vinyl Co., Inc.*, No. 23-CV-1681-JPS, 2025 WL 2356065, at *1 (E.D. Wis. Aug. 14, 2025). The Settlement is the result of mediation before a respected third-party neutral where both Parties were represented by sophisticated, experienced, and well-informed counsel. The expense of continued fact and expert discovery would have been significant, and motion practice, trial, and likely appeal would have resulted in years-long delay in recovery for Settlement Class Members, if any recovery at all. *See* Chalos Decl. ¶ 25. Adding to the risks of further litigation is the complexity of the alleged underlying product defect and the legal issues presented, which is avoided with the Settlement. *See id.* System Owners and Primary Users are able to be compensated now, after three years of litigation, instead of possibly recovering at some uncertain time in the future, or not recovering. *See id.*

B.     **Class Counsel Have Adequately Represented the Settlement Class[20]**

Plaintiffs and their counsel have adequately represented the proposed Settlement Class by zealously prosecuting this litigation. Interim Class Counsel's advocacy included extensive investigation and research in advance of filing the Consolidated Class Action Complaint, success

---

[20] The "adequacy of class counsel's representation of the settlement class" is *Wong* factor six and is also identified in the Federal Rules of Civil Procedure in Rule 23(e)(2)(A).

in opposing Generac's motion to dismiss, and significant time and resources expended on discovery, all of which was done with the aid of expert analysis. The Settlement is the result of Interim Class Counsel engaging in an extended full-day mediation with Robert Meyer, a respected and experienced third-party neutral. *See id.* ¶¶ 21–22. Class Counsel's sustained efforts over several years achieved the substantial benefits for the proposed Settlement Class pending before the Court.

### C.   The Settlement Resulted from Arm's Length Negotiation[21]

On August 7, 2025, the Parties exchanged mediation briefs and submitted those briefs to the mediator, Robert Meyer. *See id.* ¶ 21. The Parties attended an all-day, in-person, arm's length mediation session with Robert Meyer at the JAMS offices in Los Angeles, California on August 14, 2025, and were able to arrive at a settlement in principle. *See id.* The Parties continued to negotiate trailing matters and drafted the Settlement Agreement. *See id.* ¶ 22. After an additional five months of hard-fought negotiations between the Parties, a final agreement was reached and the Parties executed the Settlement Agreement on January 9, 2026. *See id.*.

### D.   The Settlement is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal[22]

The proposed Settlement is adequate in light of the costs, risks, uncertainty, and delay of trial and appeal. The proposed Settlement results in immediate and substantial monetary and non-monetary relief which is not guaranteed absent the Settlement. Class Counsel believes the Settlement represents an excellent result for the Settlement Class. *See id.* ¶¶ 28–29. While Plaintiffs are confident in the strengths of their case, they are aware of the defenses available to Generac and

---

[21] "Arm's length negotiations" is identified in the Federal Rules of Civil Procedure in Rule 23(e)(2)(B).
[22] The "adequacy of the settlement in light of the costs, risks, and delay of trial and appeal" is identified in *Wong* factors one, two, and six and is also identified in the Federal Rules of Civil Procedure in Rule 23(e)(2)(C)(i).

the inherent risks of litigation, and in particular complex product defect class actions. *See id.* ¶ 25. Going forward, Plaintiffs anticipate that Generac would vigorously oppose Plaintiffs' motion for class certification and likely would have sought to move for summary judgment and move to exclude Plaintiffs' experts under *Daubert*. Even if Plaintiffs were meritorious at each stage, it would involve significant time and resources, and only after additional fact and expert discovery were further litigated and completed. After these challenges, Plaintiffs would then be confronted with having to successfully try this case (on behalf of thirty-one named Plaintiffs involving sixteen state classes) and then overcome anticipated appeals, with any potential recovery many years from being realized. *See, e.g., Harvey v. Cmty. Health Network, Inc.*, No. 1:22-cv-000659-RLM-MJD, 2023 WL 3240878, at *3 (S.D. Ind. May 3, 2023) ("The costs, risks, and delays of trial and appeal could've delayed any recovery for several years and would have risked the class recovering nothing had this court or an appellate court ruled against them on a motion for class certification, a motion for summary judgment, at trial, or on appeal from a final judgment."). The adequacy of the proposed Settlement is well-supported by the work performed by Plaintiffs' counsel to date in the case.

### E.    The Method of Distributing Relief is Effective[23]

The proposed method for the distribution of relief under the Settlement is effective and weighs in favor of preliminary approval. First, the proposed non-monetary relief goes into effect after Final Approval and requires no action on the part of Settlement Class Members. See S.A. § 3.7. Second, the non-reversionary monetary relief available for the Settlement Class is distributed based on a reasonable methodology for dividing the $15 million Settlement Fund, addressing various forms of damages suffered by the Settlement Class. *See id.* § 3.1.

---

[23] The "effectiveness of any proposed method of distributing relief" is identified in the Federal Rules of Civil Procedure in Rule 23(e)(2)(C)(ii).

The primary monetary relief afforded to Owners and Primary Users of the System (System Claims) is consistent with Plaintiffs' damages theory related to injury at the point of purchase and encompasses experiences with System power reduction. *See id.* § 1.61. Significantly, Settlement Class Members identified on the Settlement Class List will be *prequalified* for a System Claim and will not need to provide additional proof of eligibility to recover under this claim category. *See id.* § 3.11(C)(1)(a). Moreover, the amount awarded for each Ownership Claim will be based on a point system that accounts for several variables based on System size and risk borne by the Owner and Primary User. *See id.* § 3.11(A)(3). The number of Snaps per System is easily ascertained by Owners and Primary Users of the System, which makes distribution of System Claim relief streamlined without imposing onerous burdens on Settlement Class Members. *See* Chalos Decl. ¶ 26.

Additionally, $2 million has been allocated to the Cash Recovery Fund to compensate Settlement Class Members for out of pocket expenses related to the Snap devices, extended loss of power generation due to the Snaps, and other miscellaneous costs. *See* S.A. § 1.3. If the claim amounts from this fund exceed $2 million, payments will be reduced on a *pro rata* basis. *See id.* § 3.11(A)(1). The proposed method of distributing funds based on out-of-pocket costs Claims is effective as well. Settlement Class Members will have an opportunity to prove up their damages and receive a dollar-for-dollar reimbursement. *See id.* §§ 3.11(C)(2)–(3). Further, the Settlement provides for a standalone Extraordinary Damage Fund to account for claims with extraordinary circumstances. *See id.* § 1.20. Such a fund helps ensure that an anticipated small number of Claimants with disproportionately large Cash Recovery Claims do not draw a disproportionate share from the Cash Recovery fund after reaching their Maximum Individual Award. *See id.* § 3.11(A)(2).

## F.    Attorney's Fees[24]

When evaluating attorney's fees for purposes of determining preliminary approval of this Settlement, it is notable that the Settlement Agreement explicitly states that "[i]t is not a condition of this Settlement that the Court approve attorneys' fees, costs, expenses, or service awards or any particular amount thereof." *See id.* § 11.1. Further, Settlement Class Members will have ample time to review and potentially object to Plaintiffs' request for a Fee Award. *See id.* § 11.2. Generac also expressly reserves the right to oppose Plaintiffs' request. *See id.* § 11.1.

## G.    Class Members are Treated Equitably[25]

As reflected in the Plan of Allocation, the proposed Settlement treats Settlement Class Members equitably relative to each other while taking into account relevant variables and contexts, such as differences in System size, purchase date, out of pocket expenses, and periods of downtime. *See id.* § 3.11. The Plan of Allocation also provides Claimants with their share of the Settlement Fund based on their proportionate recognized losses. *See id.* § 3.11.

## H.    The Opinion of Competent Counsel[26]

Class Counsel has carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence pertaining to the claims asserted against Generac and the defenses Generac has raised, the likelihood of prevailing on the claims, and the risk, expense, and duration of continued litigation, including through trial and any appeals. Class Counsel strongly supports the Settlement and endorses it without reservation. *See* Chalos Decl. ¶ 29. Class Counsel has significant experience in products liability and other complex class action litigation and has negotiated numerous other substantial class action recoveries throughout the country. Exhibits 1–

---

[24] "Attorney's fees" is identified in the Federal Rules of Civil Procedure in Rule 23(e)(C)(iii).
[25] The "equitable treatment of class members" is identified as *Wong* factors three and four and is also identified in the Federal Rules of Civil Procedure in Rule 23(e)(2)(D).
[26] The "opinion of competent counsel" is *Wong* factor five.

4 attached to Chalos Decl. Given the experience possessed by Class Counsel, weight should be given to its determination that the proposed Settlement is an excellent result that confers substantial, immediate benefits on the Settlement Class. *See* Chalos Decl. ¶ 28.

## VII. APPOINTMENT OF PROPOSED SETTLEMENT CLASS REPRESENTATIVES

Plaintiffs request that the Named Plaintiffs be appointed as Settlement Class Representatives. The Named Plaintiffs have diligently represented and will adequately serve the best interests of the Settlement Class for the duration of the litigation. *See* Chalos Decl. ¶ 19.

## VIII. APPOINTMENT OF PROPOSED SETTLEMENT CLASS COUNSEL

Plaintiffs request that Ian J. Barlow of Kershaw Talley Barlow PC; Mark P. Chalos of Lieff Cabraser Heimann & Bernstein, LLP; Scott C. Harris of Bryson Harris Suciu & DeMay, PLLC; James J. Rosemergy of Carey Danis & Lowe; and Harper T. Segui of. Lee Segui, PLLC, be appointed as Settlement Class Counsel for this action. Proposed Settlement Class Counsel possess the experience, ability, and resources to prosecute these claims and were knowledgeable and informed about every aspect of this case for purposes of negotiating the Settlement pending before the Court. *See* Chalos Decl. ¶ 31–48.

Plaintiffs' counsel have unmatched experience and expertise litigating class action cases generally and product defect cases in particular. *See id.* Further, the Court previously ordered four of the five[27] proposed Settlement Class Counsel to serve as lead counsel in this MDL,[28] and all five attorneys have been extensively involved in the decision-making of the litigation, making

---

[27] Scott C. Harris and Harper T. Segui were previously at the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), and thus Ms. Segui did not seek to be appointed as lead counsel after consolidation by the JPML. However, both attorneys left Milberg during the pendency of this litigation but have the requisite knowledge, experience, and resources to perform the role of Settlement Class Counsel. *See* Chalos Decl. ¶ 39–41, 45–47.

[28] *See* Order Granting the Application the Proposed *Basler* Slate for Appointment of Co-Lead Counsel, Liaison Counsel, and Plaintiffs' Steering Committee, ECF 12 (July 18, 2023).

Plaintiffs' counsel best equipped to serve as Settlement Class Counsel on behalf of the Settlement Class. *See* Chalos Decl. ¶ 48. They are more than adequate to serve as Settlement Class Counsel in this matter.

## IX.    THE PROPOSED NOTICE PLAN IS ADEQUATE

A notice plan warrants the Court's approval if it "provides the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. at 1091 (cleaned up).

After a competitive bidding process, both Parties' counsel agreed, subject to Court approval, to retain Eisner as the Settlement Administrator. *See* S.A. § 1.53. Eisner is an experienced and competent settlement and claims administrator and is familiar with product defect class action settlements. *See* Schwartz Decl. ¶ 2. It is the Settlement Administrator's opinion that the proposed Notice Plan comports with due process. *See id.* ¶ 8.

Eisner will undergo specific and reasonable steps to provide direct and indirect notice, as described above. Direct notice will largely be based on the data Generac provides to Eisner for purposes of effectuating direct notice, with the understanding that approximately 80% of the Settlement Class will receive direct notice based on System location information for and email accounts associated with registered Systems. *See* S.A. § 4.2. Reaching 80% of the proposed Settlement Class via direct notice falls within the range of reasonable notice and will ultimately be greater than 80% after accounting for indirect notice. *See In re TikTok, Inc., Consumer Privacy Litig.*, 565 F. Supp. 3d at 1092 ("The Federal Judicial Center has found that a notice plan calculated to reach between 70% and 95% of the class in total is reasonable."). The Settlement also proposes that Eisner will implement an online media campaign for a period of thirty days in addition to

creating a Settlement Website as a repository for information related to the Settlement. *See* S.A.

§§ 4.6–4.7. Eisner's proposed approach for indirect notice anticipates generating more than 45

million impressions, which speaks to its scale and scope. Schwartz Decl. ¶ 18. The proposed Notice

Plan as a whole is the best notice practicable under the circumstances and should be approved.

## X.  PROPOSED SCHEDULE OF EVENTS

The parties propose the following timeline below:

| Event | Date | Source |
|---|---|---|
| Notice Plan implementation including Settlement Website and. Direct and Indirect Notice | Twenty-one (21) days following entry of the Preliminary Approval Order | S.A. §§ 4.4, 4.6–4.7 |
| Fee/Cost/Service Award Motion | Seventy-Four (74) days following entry of the Preliminary Approval Order | S.A. § 11.2 |
| Objection and Exclusion Deadline | Eighty-nine (89) days following entry of the Preliminary Approval Order | S.A. § 1.32 |
| Claims Deadline | One hundred twenty-four (124) days following entry of the Preliminary Approval Order | S.A. § 1.7 |
| Final Approval Motion | One hundred forty-four (144) days following entry of the Preliminary Approval Order | S.A. § 10.1 |

## XI.  CONCLUSION

Plaintiffs' respectfully request that the Court: (1) grant Preliminary Approval of the

Settlement between Plaintiffs and Defendants Generac Power Systems, Inc. and Generac

Holdings, Inc. (collectively "Generac"); (2) certify for settlement purposes the proposed

Settlement Class; (3) appoint the thirty-one Named Plaintiffs as Settlement Class Representatives;

(4) appoint as Settlement Class Counsel Ian J. Barlow, Mark P. Chalos, Scott C. Harris, James J.

Rosemergy, and Harper T. Segui; (5) approve the proposed form and method of notice set forth in

the Settlement Agreement; (6) approve the proposed Objection and Exclusion procedures; (7) set

a date and time for a Fairness Hearing for the Court to consider final approval of the Settlement;

and (8) stay all deadlines in this litigation pending Final Approval of the Settlement.

Dated: January 9, 2026

Respectfully submitted,

By: /s/Mary C. Flanner
Mary C. Flanner
SBN 1013095
Nola J. Hitchcock Cross
SBN 1015817**
**CROSS LAW FIRM**
845 N. 11th Street
Milwaukee, WI 53233
Telephone: (414) 224-0000
Email: njhcross@crosslawfirm.com
Email: mflanner@crosslawfirm.com

Mark P. Chalos*
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
222 2nd Ave. South, Ste. 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Email: mchalos@lchb.com

Scott C. Harris*
**BRYSON HARRIS SUCIU &
DEMAY, PLLC**
900 West Morgan Street
Raleigh, NC 27603
T: (919) 600-5000
F: (919) 600-5035
Email: sharris@brysonpllc.com

Ian J. Barlow*
**KERSHAW TALLEY BARLOW**
401 Watt Ave. Ste. 1
Sacramento, CA 95864
Telephone: (916) 779-7000
Email: ian@ktblegal.com

James J. Rosemergy*
**CAREY DANIS & LOWE**
8235 Forsyth Blvd., Ste. 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Email: jrosemergy@careydanis.com

* *Plaintiffs' Lead Counsel*
** *Plaintiffs' Liaison Counsel*